COMMISSIONER OF INTERNAL REVENUE

v.

HENRY HESS CO. et al.

HENRY HESS CO. et al.

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 13329.

United States Court of Appeals
Ninth Circuit.

Feb. 16, 1954.

554

Charles S. Lyon, Asst. Atty. Gen., Charles W. Davis, Chief Counsel, Bureau of Internal Revenue, Ellis N. Slack, Chief, Appellate Section, Department of Justice, George Lynch, Helen Goodner, Morton K. Rothschild, Attorneys, Washington, D. C., for appellant.

Arthur H. Kent, Valentine Brookes, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and HEALY, Circuit Judges.

DENMAN, Chief Judge.

Reviews are sought of tax court decisions respecting the income and declared value excess profit taxes due from the Christenson Steamship Company under the Company's calendar year taxation for the years 1942, 1943 and 1944. The Tax Court made its determination for the three years in a consolidated hearing and the reviews are considered here.

### The Tax Year 1942.

The Commissioner of Internal Revenue, hereafter the Commissioner, petitions for a review of the decision of the Tax Court holding Henry Hess Company and others, hereafter Hess, not liable for a deficiency assessed against it as a transferee by the Commissioner for the tax year 1942 because of the inclusion in

the income of that year of the profit to the Christenson Steamship Company on the requisition of its steamer, the Jane Christenson, by the United States War Shipping Administration on November 12, 1942. The requisition was without determination of the steamer's value.

Hess' interest in the claim for the Christenson Steamship Company's profit arises in the following manner. After the requisition of its steamer the Christenson Steamship Company, a California corporation, dissolved on November 13, 1942, and distributed its claim for the undetermined value of the steamer to its sole stockholder, Sudden & Christenson, another California corporation. Four days later the latter corporation, then in process of dissolution, on November 17, 1942, distributed the Jane Christenson claim to its stockholders, of which Hess was one. His share was 82/900.

The books of the Christenson Steamship Company were on an accrual basis and the first question is, did Hess thus become liable for 82/900 of a capital gain tax on the undetermined profit from the undetermined value of the requisitioned vessel? Or to state it more simply, was the dissolved corporation liable for any tax chargeable to it for the year 1942?

The applicable regulation of the Bureau of Internal Revenue for the year 1942 is stated in Treasury Regulation 111, § 29.42–1, as follows:

"* * * If a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in the later year, assuming that the money or property would have been income in the earlier year if then received. * * * Such items as claims for compensation under canceled Government contracts constitute income for the year in which they are allowed or their value is otherwise definitely determined, if the return is rendered on the accrual basis; or for the year in which received, if the return is rendered on the basis of cash receipts and disbursements."

■ That the taxpayer on an accrual basis, who has a claim arising in a certain year but the amount of which is in substantial controversy not determined in that year, is not taxable therefor in that year has been held by this court in H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932, 938, following United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 93, 56 S.Ct. 353, 80 L.Ed. 500.

■ Here, in 1942, the government agencies were in dispute as to the terms of valuation of the vessel. The Comptroller General contended that her value on September 8, 1939, controlled, refusing to recognize any increase in value arising from war conditions between then and 1942. The War Shipping Administration disagreed with the Comptroller General, but refused to make its determination until the standards of valuation for such ships as the Jane Christenson were determined. The vessel was approximately 21 years old in 1942 and her book value on November 12, 1942, was $30,581.32. Hess and the other stockholders in 1942 claimed her value to be $640,000. when requisitioned.

We think that the Christenson Steamship Company claim so undetermined in 1942 is one of "such items as claims for compensation under cancelled Government contracts" of Regulation 111, § 29.42–1, supra, and the Christenson Steamship Company being on an "accrual basis" its tax was not determinable in 1942 and the Tax Court correctly held that the tax then was not chargeable against it.

The decision of the Tax Court as to the year 1942 is affirmed.

*Tax Years 1943 and 1944.*

The stockholder transferees, described in the decision for 1942 as Hess, petition for a review of a decision of the Tax Court holding Hess liable as transferees for income tax upon the amount of tax liability of the corporation, if it had

been liable, in 1943 upon the money received by it from the Government in 1943 in part payment of the amount due for the requisition of the Jane Christenson from the Christenson Steamship Company and for income taxes for 1944 for the balance of the then agreed value of the vessel. They also seek review for liability of that Company's declared value excess profit tax for the year 1943.

There is no dispute as to the amounts paid by the Government for the steamer in 1943 and 1944. The sole contention of Hess is that on the dissolution of the Christenson Steamship Company in 1942, it ceased to be a taxable entity for any subsequent year and having no tax liability none existed in Hess.

■ The 1943 income arose when the War Shipping Administration offered generally to claimants for just compensation for vessels requisitioned payments on account of their claims without prejudice to the rights of either party to contest the amount payable as just compensation. Hess resolved to accept this offer, but the War Shipping Administration refused to make any payments for the steamer except to the Christenson Steamship Company.[1]

The directors of the Steamship Company met on September 2, 1943, and executed the necessary papers. In an agreement with the War Shipping Administration for the payment of the claim to the Steamship Company, Hess executed waivers in favor of the Steamship Company of their claims against the government as distributees of the Steamship Company. The War Shipping Administration drew a check payable to the Steamship Company and delivered it to the Company. Thereafter the various proportions of the amount received by the Steamship Company were distributed to Hess. They paid the tax on the additions to their own incomes, but contest the added tax assessed to them in an amount equal to the estimated amount of the tax on the corporation. The payment in final settlement in 1944 was made in the same manner.

■ The fundamental question here is the power of the Commissioner to impose a tax liability in 1943 and 1944 upon the Christenson Steamship Company, for the distributees are liable only for tax for which the corporation is liable.

The Commissioner's power to assess is confined by 26 U.S.C. § 3612 to "any person [who] fails to make and *file a return* * * * at the time prescribed by law or by regulation made under authority of law * * *. The Commissioner shall determine and assess all taxes * * * as to which returns * * * are so made under the provisions of this section." (Emphasis supplied.)

Pursuant to the above provision for a "regulation" respecting returns of a taxpayer, a treasury regulation 111 § 29.-52–1 for "Corporation Returns" provided that a fully dissolved corporation is not "in existence" for the making of corporate returns of its income. The pertinent provisions of the regulation are:

"§ 29.52–1. *Corporation returns.* Every corporation not expressly exempt from tax must make a return of income, regardless of the amount of its net income. * * * A corporation having an existence during any portion of a taxable year is required to make a return. If a corporation was not in existence throughout an annual accounting period (either calendar year or fiscal year), the corporation is required to make a return for that fractional part of a year during which it was in existence. *A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not*

---

[1]. This attitude was caused by the belief of the general counsel of the War Shipping Administration that the Federal Assignment of Claims Act, 31 U.S.C.A. § 203, prohibited the assignment to share-holders. in liquidation of a claim against the United States. This interpretation of the statute was erroneous. See Novo Trading Corp. v. Commissioner, 2 Cir., 113 F.2d 320.

*under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs,* such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets, and it continues in existence. A corporation does not go out of existence if it is merely turned over to receivers or trustees who continue to operate it. * * *" (Emphasis supplied.)

No corporation more completely could have ceased "business" than the Christenson Steamship Company when in 1942 it transferred all of its assets, including its claim against the government, to the Sudden and Christenson Steamship Company and then was dissolved. Its nonexistence requiring no tax return from it remained, though as expressly provided in the regulation, the corporation was treated by its directors as existing for the purpose of pressing its claim against the government by "suing" if necessary.

Since it so was not in existence and not required to make a return, it was not a "person [who] fails to make and file a return at the time prescribed by law or by regulation" of 26 U.S.C. § 3612. Hence the Commissioner could not impose upon the Christenson Steamship Company any liability to pay any income tax in 1943 and 1944.

The liability of Hess as transferee is that created by 26 U.S.C. § 311(a)(1) reading:

"(1) Transferees. The *liability,* at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) *imposed*

upon the taxpayer by this chapter." (Emphasis supplied.)

Since no tax liability could be imposed on the taxpayer transferor, no liability exists in Hess, the transferee. See Tooley v. Commissioner, 9 Cir., 121 F.2d 350, 356.

It should be noted at this point that it is most significant that, although Hess advanced this contention that the Steamship Company's dissolution had terminated its corporate existence for federal tax purposes by virtue of Treasury Regulation 111, § 29.52–1, both before the Tax Court and here, nevertheless the Commissioner carefully avoided it in his briefs both to the Tax Court and to us, and the Tax Court also failed to consider this contention when presented to it by Hess' brief.

Once a corporation has dissolved, its position is in many ways analogous to that of a dead person. Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 634, 69 S.Ct. 762, 93 L.Ed. 931. Prior to the enactment of curative legislation,[2] if an individual owned a steamship which was requisitioned by the War Shipping Administration on November 12, 1942, and died the following day, no one would have been taxable upon *his* gain when finally realized; but the income would have been taxable solely as a gain to his estate or successor with the benefit of a stepped-up basis. Nichols v. United States, 64 Ct.Cl. 241, certiorari denied 277 U.S. 584, 48 S.Ct. 432, 72 L.Ed. 999; I.R.C. § 113(a)(5). There is no such curative legislation applicable to dissolved corporations.

This is not a case where a corporation distributes a right to receive income already earned but not realized and thereafter remains in existence. In such a case, the income is taxable to the corporation when realized by the shareholders.[3] Since the directors did not re-

---

**2.** Section 42, Revenue Act of 1934, as amended by Section 134, Revenue Act of 1942. I.R.C. § 126.

**3.** United States v. Joliet & C. R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658; United States v. Lynch, 9 Cir., 192 F.2d 718; Commissioner of Internal Revenue

v. First State Bank, 5. Cir., 168 F.2d 1004, 7 A.L.R. 738, certiorari denied 335 U.S. 867, 69 S.Ct. 137, 93 L.Ed. 412; Floyd v. Scofield, 5 Cir., 193 F.2d 594; First Nat. Bank of St. Elmo v. United States, 7 Cir., 194 F.2d 389, 391–392.

create the corporation for federal tax purposes, the instant case is even stronger than Novo Trading Corp. v. Commissioner, 2 Cir., 113 F.2d 320. There a corporation had distributed all of its assets and, although not legally dissolved, it was completely dormant. Among the assets was a claim against the United States for illegally collected import duties which had been paid by the corporation under protest. In a subsequent year this claim was allowed and a Treasury check was drawn to the order of the corporation. This check was endorsed and collected by the attorneys who prosecuted the claim, they having received a power of attorney for that purpose from the corporation, and the proceeds were divided among the shareholders. It was held that the corporation realized no income by the collection of the claim. While it is true, as pointed out by the Commissioner, that the court in the Novo Trading Corp. case did not discuss the effect of the corporate action, this factor was considered decisive by the Board of Tax Appeals which the Second Circuit reversed. See Novo Trading Corp., P-H BTA Mem. 39-345. As the Board pointed out, the claim was prosecuted in the name of the corporation and the Treasury Department had no notice of the assignment to the shareholders. Here, the Steamship Company was fully dissolved and, until mistakenly requested by the War Shipping Administration, had taken no action regarding the claim. As there, the Steamship Company had fully liquidated and had distributed all of its assets.

■ This court has recently held that where shareholders of a fully dissolved corporation receive money or other property which would have been taxable income to the corporation at that time, if the corporation were still in existence, the corporation is not taxable thereon. United States v. Horschel, 9 Cir., 205 F.2d 646. In that case a Washington corporation distributed its assets to its shareholders and dissolved in 1943. As in the case at bar, the government attempted to tax the corporation (a cash basis taxpayer) in the next year on income which arose then. One item of income involved was interest due in 1943 but unpaid when the corporation was dissolved. This interest was collected in 1944. The government contended, as it does here, that the right to the interest arose during the time the corporation owned the notes, so that the interest was fully earned by the corporation and should be taxed to it. This court held that this income was taxable to the shareholders and not to the corporation. A similar case is Herbert v. Riddell, D.C. S.D.Cal., 103 F.Supp. 369.

This is not a case such as Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, relied upon by the Tax Court and by the Commissioner. There a corporation negotiated a sale of an asset and then, in order to avoid taxes, transferred the property to its shareholders in order that they might consummate the sale, meantime retaining other assets and continuing to exist as a taxable entity. Here, the Steamship Company transferred all of its property to its shareholders and ceased to do business or to exist for tax purposes. There is no evidence that the dissolution of the Steamship Company was for tax avoidance rather than business reasons.

■ Treasury Regulation 111, § 29.-22(a)–20, cited by the Commissioner, does not make the corporation subject to taxation. That regulation provides in part:

"§ 29.22(a)–20. *Gross income of corporation in liquidation.* When a corporation is dissolved its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of *liquidating the assets* and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. * * * Any sales of property by them are to be treated as if made by the corporation for the purposes of ascertaining the gain or loss. * * *" (Emphasis supplied.)

As indicated by the phrase of its title, "corporation in liquidation," this regulation describes the *usual* occurrence of a corporation continuing in business for the purpose of liquidating its retained assets and winding up its affairs for dissolution. In the instant case, the Steamship Company was not in liquidation but was fully wound up, it had no assets to liquidate, and all its debts had been paid on December 30, 1942. This is not the *usual* case contemplated by this regulation. There was no need for, nor were there any, "receivers or trustees in dissolution" for the above purposes who did "stand in the stead of the corporation" after December 30, 1942.

The above disposition of the question of the Steamship Company's liability for income taxes makes it unnecessary to consider the other points raised by Hess. If a corporation declares no capital stock on June 30, 1943, it owes no capital stock tax under former I.R.C. § 600 et seq., and if it has no income in 1943, it owes no declared value excess profit tax under former I.R.C. § 1200 et seq.

The decision of the Tax Court as to the income and declared value excess profit tax liability of the Steamship Company for the years 1943 and 1944 is reversed.