Charles F. DALLY and Sarafrancis Dally, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14249.

United States Court of Appeals Ninth Circuit.

Nov. 21, 1955.

Rehearing Denied Dec. 22, 1955.

Gerald D. Hile, Clifford Hoof, Gerald Shucklin, Hile, Hoof & Shucklin, Seattle, Wash., for appellants.

H. Brian Holland, Asst. Atty. Gen., John Potts Barnes, Chief Counsel, I. R. S., Chicago, Ill., Davis W. Morton, Jr., Ellis N. Slack, L. W. Post, Sp. Assts. to Atty. Gen., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

The petitioning taxpayers are husband and wife. The wife is involved only because the income here considered was community income under Washington law. By "petitioner", as used herein, we mean Charles F. Dally.

In May, 1942, petitioner entered into a contract with Federal Public Housing Authority for the manufacture and delivery of 1000 prefabricated housing units. Article 8 of the contract provided: "Payments—The contractor shall be paid, upon the submission of properly certified invoices or vouchers semi-monthly, ninety per cent (90%) of the prices stipulated herein for articles delivered and accepted or services rendered, less deductions, if any, as herein provided. The remaining ten per cent (10%) of the prices stipulated herein shall not be paid until all of the construction and erection work of all the dwelling units has been finished and finally accepted by the contracting officer." Deliveries under the contract began in October, 1942, and continued thereafter until about February 1, 1943. Payments aggregating $1,870,251.24 were made on invoices or vouchers furnished from time to time, each setting forth the number of houses delivered in the period stated therein, generally semi-monthly. These were on forms supplied by the Authority, and headed "Periodical Estimate for Partial Payment". Eight such forms were presented. Payments were made from time to time in the amounts shown thereon. The first six (numbered 1 to 6) set forth the houses delivered in six periods named, the sixth being a period concluding December 31, 1942. Nos. 7 and 8 were for periods ending January 23, and January 31, 1943, respectively.

Petitioner reported his income on the accrual basis for the calendar year. His total profit from this contract was $832,-202.33. He filed returns for the years 1942 and 1943 allocating the profit as follows: The total gross receipts from vouchers 1 to 6 inclusive were $1,621,-666.06. Ten per cent of this was retained, as provided in Article 8, supra, the balance being $1,459,499.45. This latter figure was shown as gross receipts from the contract in 1942, and the returns for 1943 reflected gross receipts of $410,751.-79, which included the 10 per cent retained amount from the houses delivered in 1942. Costs were allocated proportionately. In consequence some 80 per cent of the total profits were allocated to 1942. (The percentage figure is approximate. The original returns are not included in the record.)

After these original returns for the years 1942 and 1943 had been filed, the petitioner, following a study of the records of his shipments of housing units, came to the conclusion that the dates of actual delivery rather than the dates appearing on approved periodic estimates should control the allocation of the total profit as between the years 1942–1943. Accordingly amended returns were filed showing the greater portion of the profit accruing in 1943 rather than in 1942.[1] The Commissioner determined a deficiency refusing to recognize the allocation of profits made in the amended returns and holding that the profit realized in 1942 should be reported on the basis of the certified periodic estimates, Nos. 1 to 6 inclusive, basing the same upon the total amount of gross receipts attributable to the houses listed herein without deduction of the 10 per cent previously mentioned.

Upon petition to the Tax Court for a redetermination of the tax, that court in substance approved an allocation of the income substantially as calculated in petitioner's first returns for the two years mentioned. The Tax Court held, as petitioner contended, that his right to the 10 per cent retained under the contract did not ripen "until all of the construction and erection work of all the dwelling units has been finished and finally accepted by the contracting officer." In other

[1.] A second set of amended returns showing the same allocation was filed later for another purpose which is not material here and therefore we disregard them.

respects it held that on December 31, 1942, the events had occurred which fixed the liability of the United States to pay and the petitioner to receive the total sum which was the aggregate of the amounts listed in the first six estimates less the 10 per cent retention.

Upon this petition to review this action of the Tax Court petitioner does not question the theory upon which the decision of the Court proceeded. No effort is made to contend that the petitioner's right to the payments did not accrue until the dates of actual delivery of the complete units as suggested in his amended returns. The conclusion of the Court that it was the periodical estimates which determined the dates when the petitioner's right to be paid ripened and became absolute is acquiesced in by the petitioner as he presents his case here. What he now argues is a new point which does not appear to have been presented or suggested to the Tax Court, namely, that an examination of the periodical estimate No. 6, which was introduced in evidence before the Tax Court, and which purported to cover units delivered for the period December 16, 1942 to December 31, 1942, shows it was not certified by the petitioner as the contractor until January 6, 1943. Petitioner says that this circumstance, first brought to the attention of any court after the case reached us, means that petitioner's right to receive the $136,528.34 shown by periodical estimate No. 6 did not accrue to him in the tax year 1942 since this certification and the submission of the invoice properly certified was a condition precedent to the right to collect the money.

The respondent says that this new point, not presented to nor decided by the Tax Court cannot be urged here as ground for reversal of the Court below. An examination of the pleadings before that Court and of its findings and decision confirms the respondent's assertion that this new point relating to the date of certification of estimate No. 6 was not called to the attention of the Tax Court but rather that the case was tried upon the assumption by all parties that the first six estimates were submitted on or before December 31, 1942.

In tax cases brought here upon appeal from a decision of a district court we have held that the appellant cannot fairly urge as ground for reversal a theory which it did not present while the case was before the trial court. United States v. Waechter, 9 Cir., 195 F.2d 963.

Petitioner says that what he here seeks is not the presentation of a new theory but merely to urge that the record shows that the Tax Court, whether inadvertently or not, erroneously failed to apply the law to the facts as shown by the record. We find it unnecessary to determine whether the rule of Waechter, supra, forecloses petitioner's present argument for we are of the opinion that it cannot be sustained upon the merits.

With respect to the houses listed in the periodic estimate No. 6, all of which had been delivered on or before December 31, 1942, petitioner's right to receive the agreed prices other than the 10 per cent retention had matured without further substantial contingency. It is true that before petitioner could get his money the sums represented by these houses so delivered would have to be filled in on the form, added up, computed and signed.

The facts here bring the case within the principle of Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 295, 52 S.Ct. 529, 76 L.Ed. 1111, which holds that income may not be deferred after the right matures, even although the ministerial act of computing the amount occurs in the subsequent year, and this although the administrative procedure to ascertain the amount to be paid is that of a public commission. Here the certificate of January 6, 1943 related back to and spoke as of December 31, 1942, when the right to the money had matured by the delivery of the houses. This mere mechanical act of making out the necessary voucher did not operate to postpone the accrual of the sum which had been earned. Commis-

sioner of Internal Revenue v. Dumari Textile Co., 2 Cir., 142 F.2d 897, 899–900. Sums payable because earned are not rendered contingent and nonaccrued by the mere fact that some additional acts are necessary in order to make the collection, even if those acts must be performed later by third persons or by the government. Automobile Ins. Co. v. Commissioner, 2 Cir., 72 F.2d 265, 267–268. Thus this court has held that a sum payable under a judgment against the United States is accruable in the year when the judgment becomes final notwithstanding Congress has yet to make the necessary appropriation to enable the judgment creditor to get his money. H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932, 939.

It is therefore our opinion that the circumstances relating to the dating of the invoice or voucher on January 6, 1943 did not operate to prevent the accrual of 90 per cent of the amount of that voucher as of December 31, 1942.

The judgment is affirmed.