*Decision will be entered under Rule 50.*

CAPITAL ENGINEERING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55211. Filed March 20, 1956.

*Wilton H. Wallace, Esq.*, for the petitioner.
*Thomas N. Chambers, Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* The Commissioner determined a deficiency of $829.46 in income tax for the fiscal year ended July 31, 1950.

The Capital Engineering Company, Inc., hereinafter called the petitioner, is a corporation organized under the laws of the State of Maryland with its principal office in Washington, D. C. The original and amended returns for the fiscal year ended July 31, 1949, and the income tax return for the fiscal year ended July 31, 1950, were filed with the then collector of internal revenue for the district of Maryland.

Some of the facts were stipulated and those that were not were the subject of the undisputed testimony of Robert L. Dobyns, the

president and principal officer of taxpayer corporation and the only witness in the case. The following narrative statement of the facts, which we find, will suffice to present the single issue in the case.

Petitioner, an accrual basis taxpayer, was a subcontractor on a high school construction job. He was awarded a contract by the prime contractor to construct concrete forms. The contract was awarded on a noncompetitive basis, and it was based upon estimated costs for material, $11,341; labor, $40,246; plus 10 per cent for overhead and 10 per cent for profit, making a total contract price of $62,000. Work was begun by the petitioner on June 19, 1949. The contract did not specify any method of payment, but the petitioner's president, who supervised the actual work, testified that it was understood that billings would be made "each month." By July 31, 1949, the petitioner had billed the contractor for the amount of $16,665, which amount was based upon estimates for material used, $8,773; labor, $5,000; an addition of 10 per cent for overhead, $1,377; and a further 10 per cent addition for profit, $1,515.[1] This formula followed that used in computing the original bid, and at no time was there any dispute over its correctness, or over the method of billing. The petitioner accrued the amount of $16,665 in its income tax return for the fiscal year ended July 31, 1949. In the following fiscal year, 1950, the job was completed and the petitioner billed the contractor for the balance of the contract price, $44,935.[2] This gave rise to a gross profit in 1950, before allowing for insurance, taxes, and other overhead, of $22,212.69. The total gross profit on the completed job was $26,292.72.

In October 1950 the petitioner filed an amended income tax return for the fiscal year ended July 31, 1949, in which it included in gross income the amount of $21,956.75 for work done in fiscal 1949, instead of $16,665, which was the amount actually billed and included in the original return for that year. The new amount was computed by adding to the actual costs of fiscal 1949 ($12,584.97) 74.468 per cent of such costs, representing the actual overhead and profit. In the income tax return for the fiscal year ended July 31, 1950, the petitioner included in gross income the remainder of the contract price, $39,643.25. The respondent, in determining the petitioner's income for the fiscal year ended July 31, 1950, disregarded the increased amount allocated by the petitioner in its amended return to the fiscal year 1949 and included in gross income the amount of $44,935, which represented the

---

[1] The actual costs to the petitioner for operations in the fiscal year 1949 were $8,576.33 for materials and $4,008.64 for labor. It appears, therefore, that $4,080.03 of gross profit, before deducting for insurance, taxes, and other overhead, was included in petitioner's income for the fiscal year ended July 31, 1949.

[2] Total billings in fiscal 1949 and 1950 were $61,600. There was a credit of $400 over the course of the job, which accounts for the discrepancy between the contract price, $62,000, and the amount actually billed.

amount billed by the petitioner for work done in that year. Under the respondent's computations, the following result appears:

| | Taxable year ended July 31 1949 | 1950 |
|---|---|---|
| Billings | $16,665.00 | $44,935.00 |
| Material and labor | 12,584.97 | 22,722.31 |
| Profit | $4,080.03 | $22,212.69 |

The sole issue in the case is whether the petitioner, an accrual basis taxpayer, may, upon the completion of a construction job covering 2 fiscal years, reallocate profits to such years based upon the exact proportion of total profits to total costs, or whether the amount to be accrued in the fiscal year involved (1950) is the total of billings actually made as the job progressed.

Petitioner's argument is, in essence, that only by reallocating the gross profits over the 2 fiscal years will its accounting method "clearly reflect" income as provided in section 41 of the 1939 Internal Revenue Code.

We do not agree with this contention. Under the accrual method of accounting an item is includible in income when the taxpayer's right to receive it has become final and definite in amount. *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281; *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. Here, the petitioner was on an accrual basis, and it billed the prime contractor as work progressed. These billings reflected the mutual understanding of the parties, and there is no contention that the parties contemplated payment under any other method.

The case is practically indistinguishable from *Charles F. Dally*, 20 T. C. 894, affd. 227 F. 2d 724 (C. A. 9, 1955), except there the taxpayer wanted to throw income forward and here petitioner wants to throw it back to a prior year. In the *Dally* case the petitioner was in the construction business and performance of his contract with the Government was started in one year and completed in the next. There the written contract called for periodic payments, on the submission of invoices, called "Periodical Estimates for Partial Payment." We held the aggregate amount of the partial payments, that were either paid or payable to Dally in the first year, was accrued that year and he could not, by a later amended return, throw a portion of this into the second year. In the Opinion we called the taxpayer's contention "hindsight checking" and we said:

No controversy existed between the petitioner and the Government over the petitioner's right to the payments in question, and the only reason the question is now raised is that the petitioner himself raises it in the hope of gaining a tax advantage. While the contract was in the course of performance neither party contemplated any course other than that payments were to be figured and paid on the basis of the estimates. As we see it, the petitioner's right to be

paid ripened and became absolute upon the submission of the certified periodical estimates. * * *

While the contract in the instant case was a somewhat loose arrangement, which Mr. Dobyns called the acceptance of an order, he frankly stated it was understood between him and the prime contractor that he was to bill the prime contractor at various times. He states: "That was common practice with us. Each month I was to bill him." While the bills during the first year were approximations, the record shows they did reflect the labor and material costs for that year, plus about 10 per cent profit.

We hold that the amount of $44,935, which represented billings made by the petitioner in the fiscal year 1950, accrued in the fiscal year 1950 and was properly includible in the petitioner's income for that year.

*Decision will be entered for the respondent.*