THE DINGLE-CLARK COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51364. Filed June 29, 1956.

*William A. Polster, Esq.*, and *Norman W. Colquhoun, Esq.*, for the petitioner.

*James F. Kennedy, Esq.*, for the respondent.

**OPINION.**

BRUCE, *Judge:* The deficiencies determined by respondent for the years 1950 and 1951, to the extent disputed, are attributable to the inclusion in petitioner's income for 1950 of the amount of $79,288.85, the portion of the fees billed National during the years 1947, 1948, and 1949 and which did not become payable until 1950. The asserted

overpayments for 1950 and 1951 are based on petitioner's claim that an additional part of the base fee as well as part of the bonus payable under the contract with National which it included in its income for 1950 and which is attributable to work completed through December 31, 1949, should have been excluded from its 1950 income and included instead in its income for 1949. The issues raised by these claims are essentially questions of accounting, the disposition of which is governed by sections 41[2] and 42,[3] Internal Revenue Code of 1939.

At all times material to this proceeding the petitioner employed an accrual method of accounting.[4] Such method contemplates the inclusion of an item in gross income when all events have occurred to fix the amount due and determine the liability to pay. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. An item may be accrued, if there is legal liability, even though the amount is not definitely fixed, if all the events have occurred by which the amount may be determined with reasonable certainty. *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290; *Lehigh Valley Railroad Co.*, 12 T. C. 977. It is the right to receive and not the actual receipt that is determinative. However, where this right depends upon a contingency or further events the item may not be accrued until the contingency or events have occurred and fixed with reasonable certainty the fact and amount of the sum involved. *United States* v. *Safety Car Heating Co.*, 297 U. S. 88; *Lucas* v. *American Code Co.*, 280 U. S. 445; *Globe Corporation*, 20 T. C. 299; *Boston Elevated Railway Co.*, 16 T. C. 1084, affirmed without discussion of this point 196 F. 2d 923; *Henry Hess Co.*, 16 T. C. 1363, reversed on other grounds 210 F. 2d 553.

Respondent maintains that no part of the compensation earned under the National contract was properly accruable prior to 1950 other than the portion of the fee which was billed as currently payable in each of the 3 preceding years.

By the end of 1949 petitioner had been at work under the contract for approximately 2½ years. Its work was then more than 95 per cent complete from the standpoint both of cost and of physical con-

---

[2] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

[3] SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

(a) GENERAL RULE.—The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *

[4] Petitioner has abandoned the claim made in its petition that the application of the optional percentage of completion method of accounting permitted by section 29.42–4 of Regulations 111 is determinative of the issue.

dition. Substantially all of the major units in the mill had been completed, tested, and placed in operation and National had made no complaint as to the quality of petitioner's work. All records upon which petitioner's fee was computed had regularly been made available to National and had been checked by its representatives as the work progressed. No dispute of any kind had arisen with respect to these records, at least not since the first few months of the contract. Cf. *Capital Engineering Co.*, 25 T. C. 1283.

In light of these facts we believe that it was evident at the end of 1949, perhaps before, that the only contingencies then existing were those incident to the completion of any construction contract such as errors in performance of the work or some catastrophe for which petitioner might be responsible which was not covered by the substantial amount of insurance carried. Indeed, contingencies of this sort were the only ones suggested by respondent's counsel during the course of the hearing and not even these were advanced on brief.

The question of whether an accrual is proper cannot be determined by reference to all of the theoretically possible events which might affect the ultimate receipt of income. This question is a practical one to be decided in light of known facts.

When so considered it is clear that there was no substantial contingency existing as of January 1, 1950, which could have prevented petitioner's ultimate receipt of the $79,288.85 invoiced prior to that date and retained by National. It is also clear that at that time petitioner could reasonably anticipate the ultimate receipt of a fee in excess of that amount.[5] We hold, therefore, that the $79,288.85 was not properly included in petitioner's income for 1950 but rather was properly accruable prior to January 1, 1950. *Harbor Plywood Corporation*, 14 T. C. 158, affd. 187 F. 2d 734.

The cases of *United States* v. *Harmon*, 205 F. 2d 919, and *Charles F. Dally*, 20 T. C. 894, affd. (C. A. 9) 227 F. 2d 724, certiorari denied 351 U. S. 908, relied upon by respondent, are distinguishable. Both of these cases involved sums retained under construction contracts with the United States Government. However, in *Dally* we found that the right to the retainage did not accrue until all construction work had been finished and finally accepted, and the court in the *Harmon* case found that the taxpayer's right to be credited with the retainage was dependent upon the final audit of the books of account of the taxpayer-contractor and those of its subcontractors. The contract involved in the present proceeding did not make payment of the retainage conditional upon a final audit of costs, formal accept-

---

[5] The analysis by petitioner's chief engineer dated December 5, 1949, disclosed that the estimated adjusted actual cost of the then remaining work was only $82,812. Accordingly the adjusted actual cost of such work would have had to exceed well over $900,000 (the estimated underrun) before any reduction was possible in the base, fee already invoiced.

ance of the work, or any comparable event. The provision calling for a study of adjusted actual costs upon completion of the work was not observed by either of the parties to the contract. The necessity for such study was removed by National's practice of approving costs as they were invoiced and auditing escalation reports at periodic intervals. Similarly, the requirement that petitioner furnish National a release of all liens prior to final payment is not in our view such an event which would prevent the accrual of the amount retained in a period prior to January 1, 1950. That condition affects the actual receipt of the amount, not its realization.

Petitioner contends that it is not enough to exclude from its 1950 income only the portions of the fee invoiced prior to January 1, 1950, but that consistent application of its regular accounting method requires that the entire uninvoiced portion of the base fee earned prior to 1950 should also have been excluded from its 1950 income.

The estimated cost of the work completed prior to January 1, 1950, was substantially more than the costs on which the fee invoices were based. This resulted from the fact that the weekly fee invoices were based on the actual costs, less premium pay, of the work to the date of invoicing, rather than upon the estimated cost of that work. Petitioner's base fee was $7\frac{1}{2}$ per cent of the latter amount, not actual cost. Therefore, petitioner argues, as the estimated costs were substantially greater than actual costs, less premium pay, a substantial portion of the fee actually earned was never reflected in any weekly fee invoices and was not, but should have been, accrued. Petitioner argues also that the portion of the bonus attributable to work completed prior to 1950 should likewise be excluded from its 1950 income.

Respondent contends that such sums were not accruable prior to the year of completion as they were not fixed in amount or reasonably ascertainable prior to that year. He contends that the possibility that National might increase the scope of work as permitted by the contract created uncertainties as to the amount of the final fee balance and that these uncertainties prevented accrual of any part of the unpaid base fee and bonus prior to 1950. He also emphasizes the fact that the computation of the amount earned by petitioner was to be affected by the amount of materials on hand at the termination of the contract. Accordingly respondent attaches no significance to the analysis by petitioner's chief engineer dated December 5, 1949.

It is not necessary that the amount of these items be exactly ascertained in order to accrue them, if a mere calculation or computation based on ascertained factors is all that remains to be done. *Selwyn Eddy Co.*, 25 B. T. A. 1341; *H. H. Brown Co.*, 8 B. T. A. 112. In our opinion both items were reasonably ascertainable as of December 31, 1949, from the data disclosed by the chief engineer's analysis. Ac-

cordingly these amounts were not properly included in petitioner's income for 1950 but were accruable prior to that year. Cf. *Henry Hess Co.*, *supra*; *Continental Tie & Lumber Co.* v. *United States*, *supra.*

Petitioner has, and we believe correctly, computed the portions of the base fee and bonus improperly included in its income for 1950 to be $29,423.53 and $223,839.69, respectively. Petitioner's computations are set out in the margin.[6] It is not in our opinion a fatal defect that these amounts are of necessity less than their true values as of December 31, 1949, because they are based on factors existing 26 days earlier. Petitioner's, chief engineer testified that nothing occurred between December 5 and December 31, 1949, to change his opinion as to the percentage of completion.

Under the contract the scope of work could be and was substantially increased as the work progressed and it could be reasonably expected at the end of 1949 that there would be some additional increases. Such changes are inevitable in any project of this magnitude. The contract did not, however, permit an increase in scope without an appropriate increase in the cost estimate and therefore a corresponding increase in the base fee. Accordingly performance of additional work in 1950 could result in a reduction in the amount of the base fee earned with respect to work completed at the end of 1949 only if the penalty provisions of the contract were to become applicable. By that time, however, it was evident that the possibility of a penalty being incurred was extremely remote. Indeed, it was clear that a substantial bonus had been earned. The estimated cost exceeded the adjusted actual cost by over $900,000. Even if there were substantial increases in scope petitioner would have to have incurred adjusted actual costs in performing the remaining work which exceeded the cost estimate for that work by $900,000 before any penalty could have

---

[6] A. Uninvoiced portion of base fee:

*Data supplied by Martin's analysis.*

| | |
|---|---|
| Estimated cost of work theretofore ordered to completion | $3, 674, 465. 32 |
| Adjusted actual cost of work to December 5, 1949 | 2, 668, 508. 86 |
| Estimated total adjusted actual cost to completion | *2, 751, 320. 86 |

*$2,668,508.86 plus $82,812 (estimated adjusted actual cost to completion).

$\frac{2,668,508.86}{2,751,320.86} \times \$3,674,465.32 = \$3,563,867.60$ estimated cost of work completed at December 5, 1949.

Fee earned prior to December 5, 1949

| | |
|---|---|
| 7½% of $3,563,867.60 | $267, 250. 07 |
| Less: fee billed to December 31, 1949 | 237, 866. 54 |
| Additional base fee earned but not invoiced in 1949 | $29, 423. 53 |

B. Bonus:

| | |
|---|---|
| | $3, 563, 867. 60 |
| Less | 2, 668, 508. 86 |
| Underrun as of December 5, 1949 | $895, 358. 74 |
| Bonus earned on work completed prior to December 5, 1949—25% of $895,358.74 | 223, 839. 69 |

been incurred. We do not think that to be a real possibility as of December 31, 1949, particularly in view of the fact that not only petitioner's work but the entire mill was nearing completion and the adjusted actual cost of all the work under the contract had been consistently less than the cost estimate for that work.

Moreover, we do not think adjustment of the final fee for material on hand at the completion of the work would prevent the accrual of this portion of the base fee and bonus prior to January 1, 1950. The contract discloses that materials remaining upon completion of the work to the extent National wished to retain or otherwise dispose of them should not be considered in computing adjusted actual cost. Such adjustment would not therefore enter into the base fee computation, as the base fee was based solely on the estimated cost. Furthermore, that adjustment could only operate in a manner favorable to petitioner, that is, since it could not in anywise cause an increase in adjusted actual cost, it could not cause the imposition of a penalty. It could not, therefore, have any effect upon petitioner's right to receive the full amount of the base fee attributable to work completed prior to January 1, 1950. The only effect this adjustment could have upon the bonus would be to increase the total bonus earned by petitioner by 25 per cent of the adjustment. Accordingly we do not think that the possibility that the total bonus earned by petitioner might be increased in the year of completion should prevent the accrual of that portion attributable to work completed prior to January 1, 1950. Nor do we think, as hereinbefore indicated, that the provisions requiring a study of adjusted actual costs and a release of all liens before payment are substantial contingencies preventing accrual of these amounts prior to the year of completion.

Lastly, we find no succor for respondent in the fact that the firm of independent certified public accountants retained by petitioner certified upon audit of petitioner's books as of December 31, 1949, that the treatment given the income derived from the National contract was in accordance with sound accounting practice. A member of that firm testified that if they had known of the chief engineer's analysis they would have immediately taken such analysis into account and accrued as income the items urged here by petitioner.

In making its various contentions petitioner has argued not only that each of the three amounts in controversy should not be included in its income for 1950 but also that such sums should be included in its income for 1949. The taxable year 1949 is not before us and we make no determination, even if the record were sufficient to do so, whether these items were accruable in whole or in part in 1949 rather than in a prior year.

*Decision will be entered under Rule 50.*