A. G. MADDOX, Acting Commissioner of
Revenue and Taxation, Government
of Guam, Appellant,

v.

BLACK, RABER–KIEF & ASSOCIATES,
a Joint Venture, Appellee.

No. 17659.

United States Court of Appeals
Ninth Circuit.

June 6, 1962.

Louis A. Otto, Jr., Atty. Gen., Harold W. Burnett, Deputy Atty. Gen., Richard D. Magee, Asst. Atty. Gen., Agana, Guam, and John H. Pigg, Portland, Or., for appellant.

Robertson, Castle & Anthony, and J. Garner Anthony, and Arthur B. Reinwald, Honolulu, Hawaii, and Arriola, Bohn & Gayle, Agana, Guam, for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

Appellee moves to dismiss the appeal in this cause on the ground no appeal has been taken from the final judgment entered below.

■ On June 9, 1961, an order was entered by the trial judge which read:

"Judgment for Petitioner. Counsel for Petitioner to prepare Findings of Fact, Conclusions of Law, and Judgment."

On June 19, 1961, appellant filed a motion for new trial and included a motion to vacate "the order for judgment * * on findings, * * * conclusions * * and judgment to be filed," made and entered on June 8, 1961 (sic).[1] Counsel for appellant asserts that reference was intended to the June 9th, 1961, order.

On June 22, 1961, Findings of Fact, Conclusions of Law and Judgment were signed and filed. No appeal was ever taken from this judgment.

On August 2, 1961, the motion for a new trial was denied.

On August 25, 1961, a notice of appeal was filed by appellant which was "from the judgment entered in this action in the 8th (sic) day of June 1961, respondent's motion for a new trial having been denied on the 2nd day of August 1961." This is the only notice of appeal given in this case.

If we assume the appeal from the order of June 8th, 1961, was actually an appeal from the order of June 9th, 1961, (to which the only motion for a new trial had been directed) it appears obvious that the order of June 9th, 1961 was not a final judgment.

The jurisdiction of this court is limited to appeals from *final decisions* of the District Court of Guam, as well as other districts (28 U.S.C. § 1291).

■ The order of June 9th, 1961 shows on its face it was not final. It required further acts before any judgment could come into existence. In order to be a final decision for purposes of appeal, the judgment must show on its face that it is a complete act of adjudication, clearly evidencing the intention of the judge that it is to be the final act of the case (with certain exceptions not here pertinent). United States v. F. & M. Schaefer Brewing Co., 1958, 356 U.S. 227, 232–235, 78 S.Ct. 674, 2 L.Ed.2d 721; Libby, McNeil & Libby v. Alaska Industrial Board, 9 Cir. 1954, 215 F.2d 781, (and see many cases cited therein at 782).

The judgment in the cause below having been entered on June 22, 1961, and no appeal having been taken therefrom, it is final, and not before us.

■ Under such circumstances, should this court (a) consider the appeal from a non-final order; (b) permit and consider an appeal from a final order from which no appeal has been taken; or (c) combine both the perfected appeal from a nonappealable order and the non-perfected appeal from an appealable judgment, and consider the appeal on its merits?

Were this question one of first impression, we might well dismiss the appeal as beyond our jurisdiction. This is what this court has done before. Hoiness v. United States, 9 Cir. 1947, 165 F.2d 504. There the libellant appealed within the prescribed time, and what he sought to have reviewed was plain, but he referred only to the second nonappealable order. The Supreme Court reversed this court's

---

**I.** No order in this case was made or entered or filed on June 8th, 1961.

decision, holding the defect resulting from a failure to refer to the first order was of such a technical nature that it should be disregarded, in view of the policy expressed by the Congress in enacting 28 U.S.C. (1946 ed.) § 777, 28 U.S.C., Rule 73(a, b). Hoiness v. United States, 1948, 335 U.S. 297 at 300–301, 69 S.Ct. 70, 93 L.Ed. 16. And see United States v. Ellicott, 1911, 223 U.S. 524, 538–539, 32 S.Ct. 334, 56 L.Ed. 535; State Farm Mutual, etc. v. Palmer, 1956, 350 U.S. 944, 76 S.Ct. 321, 100 L.Ed. 823 (per curiam) reversing 9 Cir., 225 F.2d 876; [2] Railway Express Agency, Inc. v. Epperson, 1957, 240 F.2d 189, where the eighth circuit reversed its previous holdings (p. 192), relying on State Farm Mutual v. Palmer, supra; Nolan v. Bailey, 7 Cir. 1958, 254 F.2d 638; Wetherbee v. Elgin RR Co., 7 Cir. 1953, 204 F.2d 755, and cases cited p. 756; Sobel v. Diatz, 1951, 88 U.S.App.D.C. 329, 189 F.2d 26, and cases cited p. 27.

The motion to dismiss is denied. We now reach the merits.

This then is an appeal from an order for judgment of the district court entered June 9, 1961, and a final judgment pursuant to said order entered June 22, 1961. Jurisdiction in this court rests in Title 28 United States Code §§ 1291 and 1294.

Appellee, in the court below, challenged a tax assessment of $85,058.88 under the Business Privilege Tax upon the gross income received by appellee from a Military Housing Contract with the United States. Appellee formed eleven Delaware corporations to act as mortgagor builders. The Housing Contract (Exhibit 4) dated September 9, 1958, was executed by appellee, the United States through the Air Force, and the eleven corporations. Each of the eleven housing corporations received at least one area of the project. The stock in each such corporation was deposited in escrow

for subsequent delivery to the Air Force upon completion of construction.

Each corporation mortgaged its lease to the Seattle First National Bank which advanced funds for construction. Such advances by the bank, in the total sum of $1,296,876.44, were for certain necessary items such as architects' fees, inspection fees, bank fees and interest during construction, bond and risk insurance, FHA fees and insurance, lease rental, recording fees and organization expense. Such funds were never paid directly to appellee and appellee was never entitled to receive them. Under Exhibit 4, the Housing Contract, the appellee had a right to receive only ninety per cent of the contract price for the construction in each area, until the area building was accepted by the Air Force, and the mortgage for that area then assigned to a permanent financier. Such assignments to permanent lendors were made at different times and faced a differing money market, i. e., they were sold at discounts from five to nine per cent of the mortgaged amounts dependent upon the going rate paid for the use of money. For the eleven areas these discounts totaled $1,674,302.88. Appellee never received this money representing the discount, nor did it have the right to receive it. In addition to this large sum, $51,574.74 was retained in escrow by the Air Force to cover a disputed item for top soil on the on-site contract and $1,430 on a disputed item for top soil on the off-site contract. The total amount which appellee had the right to receive during the period in question was $18,209,170.62. (See Transcript, pp. 140–141, Exhibit 3.)

Section 19540.05 of the Government Code of Guam provided for a tax rate of two percent measured against the gross income of any contractor. Prior to the execution of this Housing Contract there was added to the Government Code of

---

2. In this court, Judge Fee had drawn a distinction between notices of appeal defective "in minor particulars." He suggested that "Appeals are not of right, but of grace." Relying on Libby, McNeil & Libby v. Alaska Industrial Board, 9 Cir. 1954, 215 F.2d 781, he held there was a jurisdictional failure in the notice of appeal.

Guam Section 19545.1 which read as follows:

> "Military Housing. (a) In computing 'Gross Income' subject to the tax under this subchaper deductions from total receipts shall be allowed a contractor who is an eligible bidder having a contract with a mortgagor and the United States of America pursuant to Title VIII, 'Military Housing Insurance', of the National Housing Act, as amended (12 U.S.C. § 1748 et seq.) to the extent receipts of such contract equal in amount expenditures by the contractor for *direct labor and materials.*" (Emphasis added.)

What constitutes "direct labor and materials" then became the problem. Appellee deducted what it determined was direct labor and materials. The Tax Commissioner asserted that certain items were not direct labor and materials, such as the project manager's salary, field office expense, purchasing and warehousing expense, engineering expense, testing expense, hauling costs, construction forms, equipment and tools and a portion of the subcontract expense. Appellant conceded at oral argument that no duplication of deductions was claimed by appellee, and that "appellee's books of accounts were regularly kept in accordance with the accrual method of accounting." The Commissioner of Taxation admitted that all expenses claimed were for work performed on or materials supplied directly and solely to the housing project (Tr. 242–253). He insisted, however, that "direct labor" meant only that work performed physically on the construction site, and that "direct materials" meant only that material that became a *permanent* part of the completed structure. Thus, as an example, the expense of the lumber used to create the forms which held the concrete in place until it set—not being permanent—was not a part of the direct materials' cost.

On March 31, 1960, the Tax Commissioner levied an assessment of $88,985.27 as additional Business Privilege taxes against appellee for the period December 1958 to June 1959. Appellee appealed this assessment to the Guam Tax Appeal Board which sustained appellee as to certain items, but held that the expenses for architects' and inspection fees, legal and organization expenses, and other expenses which were payable to other persons, were not includible in gross income.

On June 12, 1959, the Tax Commissioner, apparently to support his interpretation of what constituted direct labor and materials, issued Business Privilege Tax Regulation No. 2 (Revised). This regulation refers to Section 19545.01 and Section 19545.02 of the Government Code of Guam, but does not apply to certain types of government contracts, including military housing contracts falling within Section 19545.1.

On January 25, 1961, the Tax Commissioner levied against appellee a tax assessment for the additional Business Privilege taxes for the period July 1959 through May 1960, in the amount of $85,058.88. Appellee filed a petition for review of this assessment with the District Court of Guam.[3]

Appellant's brief contains no specification of errors as required by Rule 18 of this court, 28 U.S.C.A. Appellant states certain questions are raised, and appellee states the questions raised in another manner. We believe the questions presented can be fairly stated as follows:

(1) Where a government contract requires that a portion of the contract price be paid to persons other than the contractor, either by the government or by a trustee of the proceeds, is that portion includible as gross income of the contractor under the Business Privilege Tax of Guam?

3. Between the date of the first assessment and the date of the second, the Legislature of Guam repealed the right of appeal to the Tax Appeal Board and provided for a review in the district court.

(2) Is a government housing contractor under the accrual method of accounting required to report as gross income that portion of the contract price which he is never entitled to receive, but which is retained by the interim lender to cover the discount, if any, on the sale of the mortgage through which the construction costs were obtained and paid?

(3) Under Section 19545.1 of the Government Code of Guam does the deduction for direct labor and materials include all labor and material costs of the contractor directly and solely incurred in connection with the housing project, or is it restricted to physical labor at the construction site, and to materials becoming a permanent part of the completed job?

The second and third questions were answered affirmatively and favorably to appellee by the district court below. In Findings 10 and 11, referring to the sum of $4,196,809.47 as not being direct cost of labor and materials, the court found:

"The items disallowed were all equipment used exclusively on the project, forms, electricity, gasoline, and expenses for all administrative personnel not working directly on the site, such as the draftsmen who made the surveys and detail plans for construction, the office personnel, payroll clerks, and project manager. In short, the Commissioner's criteria for direct labor and material was that the material had to be permanently incorporated in the site, and the labor had to be actually performed on the site.

"11. The term 'direct labor and material' is not so restrictive as claimed by the Commissioner. It includes costs of labor and material

4. We do not find Dally v. Commissioner, 9 Cir. 1955, 227 F.2d 724 applicable to the facts of this case.

5. This assumes that Business Privilege Tax Regulation No. 2 (Revised) is applicable to either Section 19545.0102 or Section 19545.1, although neither is specifically mentioned therein, while Subsec-

identified specifically with the housing contract. 'Gross receipts' do not include funds withheld from the contract price and burdened with an obligation and earmarked for payment to others."

The first question was likewise answered by the court below in its Finding 11 where it is stated:

" 'Gross receipts' do not include funds withheld from the contract price and burdened with an obligation and earmarked for payment to others."

We must keep in mind this tax is not an income tax, which frequently taxes income earned but not received during a certain period of time.[4] We must realize that the Tax Appeal Board of Guam has ruled, as to certain of the sums here involved, that the Commissioner's theory of assessment was erroneous. This ruling has become final. We must consider the action of the Guam Legislature in passing in January 1958 Section 19545.1 of Subchapter B, Chapter 6, Title XX, which was remedial legislation to aid this particular construction contractor in his dispute with the Commissioner of Taxation of Guam.

The Commissioner's self serving regulations, seeking to introduce a new word and the theory of "permanency" in the term "direct materials"; and a new word and theory of "physical" into the phrase "direct labor," each introduce a distinction in meaning not contained within the contract signed by the appellee; and not within the original law passed by the Legislature of Guam, and not in existence when the contract was signed.[5]

Appellee relied on general accounting principles of cost allocation to establish its rights to the deductions claimed.

tion 19500.02 is. A pretty good argument could be made that because the Regulation contained a specified reference to Subsection 19500.02 and had no reference to Section 19545.0102 or Section 19545.1, that it intentionally was given a *restricted* or *limited* purpose.

What is here involved is not a taxpayer claiming as a right something that is his by grace alone. This tax benefit was conferred by law. Its extent should be ascertained from the accepted cost allocation practices of accountants and should not be subject to irrational limitations imposed by strangling theories of interpretation made by a tax collector after the benefit has been granted the taxpayer by a legislative body.

We hold the district court's findings are amply supported by the evidence; and its findings support the judgment entered. Under no stretch of our imagination could we say the district court was clearly erroneous. Finding no error, we affirm.