CHARLES F. DALLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SARAFRANCIS DALLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37118, 37119. Promulgated August 7, 1953.

*Gerald D. Hile, Esq.*, for the petitioners.
*John H. Pigg, Esq.*, for the respondent.

898

TIETJENS, *Judge:* There is no controversy between the parties as to the principles which should govern the questions here in issue. Both cite and rely on *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. It is over the application of those principles to the facts of this case that differences arise.

The petitioner, in effect, contends that the contract called for "completed" units, and that the estimates for partial payments were, after all, only estimates and did not accurately reflect the amounts to the payment of which he was entitled of right. Consequently, the estimates being in error as a matter of hindsight checking, he says he was entitled to accrue income on the basis of actually delivered completed units only and was not bound to accrue the amounts called for by the estimates which he was in fact paid.

We do not agree with the petitioner in his contention. The contract provided that payments should be made upon the submission of

properly certified invoices or vouchers of 90 per cent of the stipulated prices for articles delivered or services rendered. In this case, as we see it, these certified invoices or vouchers were the periodical estimates for partial payment referred to in our Findings of Fact. These estimates were certified to both by the petitioner and the Government. It is obvious from the facts that the certified figures contained in the estimates were to be the basis for determining the amounts which the petitioner was entitled to be paid and which he was in fact paid. No controversy existed between the petitioner and the Government over the petitioner's right to the payments in question, and the only reason the question is now raised is that the petitioner himself raises it in the hope of gaining a tax advantage. While the contract was in the course of performance neither party contemplated any course other than that payments were to be figured and paid on the basis of the estimates. As we see it, the petitioner's right to be paid ripened and became absolute upon the submission of the certified periodical estimates. That right did not depend upon a recheck of the figures shown on the estimates; and neither was the amount to be paid governed only by completed units actually delivered. The project engineer for the Government was called as a witness by the petitioner. He testified that there naturally were deviations between the estimates and actual completed units delivered, and, in response to the Court's question as to whether payments were made according to the estimates or actual count, responded, "the payment was made on the basis of the periodical estimate." On the record before us we have found that on December 31, 1942, the events had occurred which fixed the liability of the United States to pay and the petitioner to receive 86.7 per cent of the total contract price less the 10 per cent retainage. Accordingly, that amount should have been accrued in 1942. This disposes of the main issue.

One other question remains to be answered. The Commissioner determined that the full 86.7 per cent should have been accrued in 1942. The petitioner argues that even if we decide the main issue against him, at least it would not be proper to include the 10 per cent retainage in his accrual for 1942. The Commissioner contends this issue is not before us because not specifically raised by the pleadings. We think, however, that a fair construction of the pleadings places the treatment by the Commissioner of the 10 per cent retained in issue. Under the contract, as we read it, the petitioner's right to the 10 per cent did not and could not ripen "until all of the construction and erection work of all the dwelling units has been finished and finally accepted by the contracting officer." That did not happen until 1943 and the petitioner, accordingly, did not have to accrue in 1942 10 per cent of the periodical estimates submitted in that year.

We hold, therefore, that the petitioner should have accrued in 1942, $1,621,666.06 less 10 per cent.

*Decision will be entered under Rule 50.*