243 F.2d 466
 57-1 USTC P 9602
 John P. DALEY, Minerva B. Daley, Morris Daley, Zelma B.
Daley, William Radtke, Clara Radtke, and Homer Bosse,
Trustee of the Estates of Morris K. Daley, Alice M. Daley,
Susan R. Daley, James D. Daley, Kathryn F. Daley, and Peter
D. Daley, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 15181.
 United States Court of Appeals Ninth Circuit.
 April 18, 1957.
 
 Orrick, Dahlquist, Herrington & Sutcliffe, William D. McKee, Eric Sutcliffe, San Francisco, Cal., for appellants.
 Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Sheldon I. Fink, Grant W. Wiprud, Washington, D.C., Lloyd H. Burke, U.S. Atty., Lynn Gillard, Asst. U.S. Atty., San Francisco, Cal., for appellee.
 Before ORR, FEE, and CHAMBERS, Circuit Judges.
 ORR, Circuit Judge.
 
 
 1
 In July, 1942, Daley Brothers, Ltd., were awarded a contract by the United States of America to construct a relocation center in Delta, Utah. Daley Brothers, Ltd., consisted of John P. Daley, Morris Daley, and Homer Bosse, Trustee of six trusts formerly created for the benefit of the Daley children. Daley Brothers, Ltd., formed a joint venture, hereafter the Venture, with William Radtke, to undertake performance of the contract. Appellants here are John Daley, Morris Daley, Bosse, and Radtke, together with their respective spouses.
 
 
 2
 The contract was to be completed on or before September 6, 1942. Several agreements supplemental to the original contract were entered into which extended the completion date to February 16, 1943, at which time the work done under the contract was accepted as finished and satisfactory by the Government.
 
 
 3
 The original contract price was $2,834,212.51; supplemental agreements increased the price to $3,653,259.12. Progress payments were made beginning with the construction period ending August 26, 1942.[1] By the end of 1942 nine progress payments had been made, amounting to $3,180,536.97, about 90% of the total contract price.
 
 
 4
 The Venture showed gross receipts of $3,655,672.28 upon its partnership return of income for 1942, indicating that the total contract price had been accrued on the books. The Venture's return indicated the partners' shares as going to Daley Brothers and William Radtke. On the fourth page of said return, the following appeared: '4. Check whether this return was prepared on the cash ( ) or accrual (x) basis.' The Venture filed no return of income for 1943.
 
 
 5
 John P. Daley, morris Daley, William Radtke, together with their spouses, and Homer Bosse as trustee, filed individual income tax returns for 1942 based on the 1942 Venture return.
 
 
 6
 In 1947 the Venture filed an amended partnership income tax return for 1942 and an amended return for 1943. The amended returns were accompanied by refund claims by the distributees of the Venture's net income. The Venture's amended 1942 return reported no gross receipts, profit, or loss from the Delta contract, but showed 'advances' of $3,180,536.97. This was the sum of actual net progress payments received by the Venture as of December 31, 1942. The Venture's amended 1943 return showed gross receipts of $3,620,546.28, indicating the Delta contract was reported as being finished.
 
 
 7
 The identical refund claims of the taxpayers stated their claims should be allowed for the following reasons:
 
 
 8
 'The change in the amended partnership income tax returns is for the reason that erroneous returns were filed for the years 1942 and 1943. The amended returns are consistent with the accounting procedure which was followed by Daley Brothers prior or to 1942. The amended returns are to correct the Delta, Utah, contract which was completed on September 15, 1943, and erroneously included in income for the year 1942. The claim reflects the correct tax liability in accordance with sec. 6 of the current tax payment act of 1943, Public No. 68-- 78th Congress. Included in the correction is the amount of renegotiation refund which was erroneously deducted from income in the 1942 return. It is respectfully requested that refund in the amount set forth in the claim and as also shown on the amended individual income tax return for 1943 be refunded.'
 
 
 9
 Subsequent amended refund claims by John and Morris Daley in 1951 concerned a revision of income to the trusts created for their children, and stated almost verbatim the basis for refund in the original claims.
 
 
 10
 Each claim for refund was denied by the Commissioner of Internal Revenue.
 
 
 11
 The trial court found that the Venture was bound by its intentionally reporting 1942 income from the Delta contract on the accrual basis of accounting, and rejected the taxpayers' contention that the 1942 Venture return was on the completed contract basis of accounting, mistakenly applied.
 
 
 12
 The trial court did find, however, that under the accrual system, some of the Delta contract income did not in fact accrue until 1943, and therefore was improperly reported as 1942 income; but denied recovery of overpayment because the taxpayers failed to include the improper accrual in the refund claims as a ground for relief.
 
 
 13
 The main issues for solution are: (1) Whether the trial court's finding that the Venture elected to report 1942 income from the Delta contract on the accrual basis of accounting is supported by substantial evidence and therefore not clearly erroneous; (2) In the event we determine that the trial court's finding that the Venture elected to report on the accrual basis should be affirmed, then are the taxpayers entitled to recover the improper 1942 accruals in this action; and (3) Whether the accrual basis of accounting does not clearly reflect income from the Delta contract, so that the taxpayers are not bound by its election, and could amend to the completed contract basis of accounting for 1942 and 1943.
 
 The District Court found:
 
 14
 'The reporting by Daley Brothers Delta War Venture of all of the receipts from the War Department Contract as income on the 1942 return was not the result of a mistaken belief on the part of anyone that the contract was completed in 1942. At the time the return was filed the plaintiffs and their accountant knew the contract was not completed until 1943. All of the income from the contract was intentionally reported as accruing during the year 1942 although a portion of the income from that contract did, in fact, accrue in 1943.'
 
 
 15
 and concluded:
 
 
 16
 'That Daley Brothers Delta War Venture elected to report the income from the War Department contract for the year 1942 on the accrual basis of accounting.'
 
 
 17
 The trial court further found (1) that the contract was not in fact completed as of December 31, 1942, and that this fact was obvious to everyone concerned; it discredited the testimony of the Venture's accountant to the effect that he prepared the return in the belief that the Delta contract had been completed in 1942; (2) that John P. Daley, the manager of the Venture, reported to the Army Engineers that the basis used in reporting revenue from the contract for income tax purposes was the accrual method, and not the completed contract method; and (3) that on the fourth page of the Venture's 1942 income tax return, the 'accrual' box is marked for the accounting method employed in preparing the return.
 
 
 18
 We first examine the evidence upon which the trial court based its finding that the Venture intentionally elected to report income from the Delta contract on the accrual basis.
 
 
 19
 Appellants submit that the fact that all parties knew the contract was not completed on December 31, 1942, bears no relation to the question of whether the accrual method was used, and therefore cannot be said to support the finding that the completed contract basis was not used. Appellants urge that the fundamental feature of the completed contract method is the closing out of all of the receipts and expenses of a contract in one accounting period so as to reflect the net income from the contract; and that the Venture followed this method, but mistakenly used December 31, 1942, as the end of the period.
 
 
 20
 To evaluate properly appellants' contentions we must examine the concepts of the completed contract accounting method. In doing so, we keep in mind that the Venture had been organized for the sole purpose of executing the Delta contract, and therefore there are no considerations of multi-contract construction accounting involved.[2]
 
 
 21
 The crux of the completed contract method is the adjustment of the normal annual accounting period to coincide with the term of the construction contract, so that the total cost and the total revenue of the single contract are matched in a single accounting period. The annual accounting concept is rejected in favor of a period (necessarily longer than a year) equalling the time needed to complete fully the particular project.
 
 
 22
 American Institute of Accountants, Accounting Research Bulletin No. 45 reads:
 
 
 23
 '* * * 9. The completed-contract method recognizes income only when the contract is completed, or substantially so. Accordingly, costs of contracts in process and current billings are accumulated but there are no interim charges or credits to income other than provision for losses. * * *'
 
 
 24
 U.S. Treas, Reg. 111, § 29.42-4(b) (1943) provided:
 
 
 25
 'Gross income may be reported for the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion.'
 
 
 26
 Of course, a prime defect in the method is the lack of a periodic reflection of income; many years may pass until net income is determined, depending on the length of the project. See Herwitz, Accounting for Long-Term Construction Contracts: A. Lawyer's Approach, 70 Harv.L.Rev. 449, 458.
 
 
 27
 Given a single project, the primary accounts may be kept upon either a cash or accrual basis. It is of little relevance under the completed contract method, for our purposes, whether the expenses are recorded upon payment, or upon the events determining liability; the test is when the contract costs are matched against the contract revenue, and a net income or loss figure is struck. Accordingly, in reporting taxable income, if it is desired to adopt a completed contract method, of otherwise allowable, the taxpayer will report taxable income from the contract upon the final acceptance of the work. See E. E. Black, Limited v. Alsup, 9 Cir., 1954, 211 F.2d 879. And if the taxpayer reports net income prior to the acceptance of the contract, it is indicative of an election to adopt some method other than completed contract. Here, the Venture knew the contract was not completed as of December 31, 1942, and reporting of the estimated total contract price of Delta contract was indicative of the adoption of the accrual method.[3]
 
 
 28
 Appellants assert that the determinative factor in reporting taxable income is the underlying method of accounting employed in a firm's records, if that method clearly reflects income, and that the Venture kept its records on the completed contract method, and thus was required to report its taxable income on that basis. Section 41 of the Internal Revenue Code of 1939[4] is cited to support the proposition that if the taxpayer regularly employs a method of accounting which clearly reflects income, he must compute his income for tax purposes on the basis of that method.
 
 
 29
 The accounting method employed on the day-to-day entries may be determinative as to whether the taxpayer has to report taxable income on the cash basis or on an accrual basis, but an election to report on the completed contract basis may be made irrespective of how the primary accounts are kept. We again emphasize that the controlling point is the time the costs and revenue from the contract are matched, and net income or loss ascertained. Therefore, when the completed contract method is sought to be used, the facts surrounding the election as to when to close the accounts, and ascertain the net income for the period, are controlling. The trial court properly considered the fact that the taxpayers knew the Delta contract was not completed on December 31, 1942, as supporting the conclusion that the taxpayers intended to elect the accrual basis to report taxable income.
 
 
 30
 Heavy reliance is had by appellants upon testimony concerning the manner in which the underlying accounts were kept. The Venture's accountant testified that he entered the total contract price as a receivable shortly after the contract was obtained, thereby bringing that figure into the income account immediately. Hence, it is argued that under an accrual method, the full contract price would not have been entered as a receivable at the beginning of the work, but only the progress payments would have been accrued as they became payable to the Venture. There are many accounting procedures grouped under the general label 'accrual accounting.' The fact that the contract price was recorded as a receivable does not necessarily mean the completed contract method was adopted. The essential character of the problem was brought out during the cross-examination of the Venture's accountant, to-wit:
 
 
 31
 'Q. Mr. Rosenblatt, I didn't quite understand your explanation of the difference between the accrual basis and the completed contract basis of accounting. A. Well, the entries to a ledger on an accrual basis are the entries of events as they occur, the entries as to the billing of the accounts for work done, the entries into the books for merchandise or services received as they occur, rather than when they are paid.
 
 
 32
 'Q. You are talking now about what, sir, the accrual method? A. The accrual method of accounting.
 
 
 33
 'Q. Entries are made when payments are made? A. No. Entries are made when the events occur irrespective of when payment is made or when it is received.
 
 
 34
 'Q. All right. Now, what is the difference between that and the completed contract basis? A. The completed contract basis is a method used with an accrual basis or with a cash basis, in determining profit from the contract.' (Emphasis supplied.)
 
 
 35
 We emphasize again that the method of keeping the primary accounts does not compel a report of taxable income on a completed contract basis.
 
 
 36
 The District Court also based its finding that the Venture intended to adopt an accrual method to report its 1942 income on the fact that John P. Daley submitted to the U.S. Engineer Department on January 26, 1943, a renegotiation form on which he stated that the Venture was reporting its taxable income from the Delta contract upon an accrual basis. The form submitted also contained an alternative choice of 'completed contract.' This admission adds weight to the finding that the Venture adopted the accrual method for tax purposes.
 
 
 37
 In evidence is a letter from John and Morris Daley, written on December 31, 1942, to William Radtke, during negotiations for settlement of accounts as of that date. The letter states that Radtke's capital account then showed $64,597.77 as his share of the profits. Any ascertainment of profits prior to the completion of the Delta contract would be inconsistent with a completed contract accounting basis.
 
 
 38
 On the 1942 partnership tax return the box labelled 'accrual' was checked for the accounting method employed in making the return; this fact also supports the trial court's findings. It is contended that the label placed on the return is not controlling, citing Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 51 S.Ct. 11, 75 L.Ed. 234. In that case, the taxpayer's 1916 and 1917 income tax returns stated they had been made on the cash basis, but the taxpayer had computed income on the basis of inventories and accrued receivables and payables. The Court there held that a deduction, accruing in 1916, could not be had on the 1917 return upon the cash basis, since the taxpayer was actually keeping his books on the accrual method. That Court rejected the argument that the label on the return was conclusive, and looked to the substantive method of accounting employed by the taxpayer. It is not contended in the instant case that the label is conclusive, but it is a strong circumstance to be considered.
 
 
 39
 The trial court found that a portion of the Venture income did not in fact accrue until 1943, although it was reported on the 1942 Venture return. Appellants assert this amount consists of $299,430.73 not yet approved for payment by the contracting officer as of December 31, 1942, and $173,291.42 'holdbacks' from progress payments made in 1942.[5] Under accrual accounting neither item would have been included as income in 1942, and this circumstance is pointed to as indicative of the use of the completed contract method.[6] The trial court drew the inference that the accrual method was improperly applied in the case of the amounts of 'holdbacks' and unapproved payments, and that the Venture should have adjusted these amounts to include them as 1943 income. See Dally v. Commissioner, 1953, 20 T.C. 894, affirmed, 9 Cir., 1955, 227 F.2d 724, certiorari denied, 351 U.S. 908, 76 S.Ct. 699, 100 L.Ed. 1444.
 
 
 40
 During our consideration of this case, we became concerned with the question of whether the Venture could, in any event, elect the completed contract method of accounting to report income from the Delta contract, in view of the definition of long-term contracts found in U.S.Treas.Regs. 111 § 29.42-4, which provided:
 
 
 41
 'Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used in this section the term 'long-term contracts' means building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. * * *'
 
 
 42
 The stipulated facts disclose that the contract was awarded in July, 1942, and completed and accepted by the United States of America on February 16, 1943, a period of less than one year.
 
 
 43
 We are now satisfied, however, that the Regulations have not been interpreted to preclude reporting of contracts such as the Delta project on a completed contract basis.[7]
 
 
 44
 The reasons behind the allowance of the completed contract method make it clear that the intent of the Regulations is to handle the accounting problem arising from the contract extending beyond a fiscal year. Where a construction contract is to begin and end within a single fiscal period, it is of no consequence whether the contract was reported on the accrual or completed contract basis, as the total income or loss from the project would be reported in either case during the same fiscal year. The problem with which the Regulations deal arises when the contract extends beyond the end of the fiscal year, regardless of the actual duration of the contract, thus posing the question of whether some measure of income should be recognized consistent with the annual accounting concept. The contract with which we are concerned in the instant case, although running less than one year in duration, covered parts of two fiscal years. Hence, the Venture would have been eligible to use the completed contract method, but did not elect to do so.
 
 
 45
 The finding that the appellants intentionally made their 1942 returns on an accrual basis is affirmed.
 
 
 46
 Appellants ask us, in the event we find that the Venture is bound by an election of the accrual method, to order a remand of the case for a determination of the amount of refund due them because of an error in the application of the accrual method to the 1942 income return. It is alleged that the sum of $472,722.15 was improperly accrued as 1942 income, which properly should have been included in the 1943 income return. The sum consists of progress payments paid in 1943 under the contract, and also 'holdbacks' from progress payments made in 1942, and actually paid in 1943.[8] The trial court found that the items were improperly accrued as 1942 income, but further found that the refund should not be made, because the basis for recovery stated in the refund claims and complaint was upon the ground that the income from the Delta contract was included in 1942 income under an erroneous application of the completed contract method of accounting; and that a proper application of the completed contract basis would shift the contract income to 1943.
 
 
 47
 'It is of course the law that a suit for refunds of taxes must be based on a claim previously filed with the Commissioner, and that the claim must set forth in detail each ground on which a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.' Rogan v. Ferry, 9 Cir., 1946, 154 F.2d 974, 976.
 
 
 48
 See U.S.Treas.Regs. 111, § 29.322-3 (1943); French v. Smyth, D.C.N.D.Cal., 1952, 110 F.Supp. 795, and cases therein collected, affirmed sub nom. French v. Berliner, 9 Cir., 1955 218 F.2d 351.
 
 
 49
 It is urged that an examination of the refund claims, together with the accompanying amended returns, demonstrate that the improper accrual of receipts was set forth as a ground for refund.
 
 The identical refund claims read in part:
 
 50
 '* * * The amended returns are to correct the Delta, Utah, contract, which was completed in the year 1943 and erroneously included in income for the year 1942. * * *.'
 
 
 51
 No mention is made of the improper accruals alleged to be in issue, but reference is made to accompanying amended returns. Appellants compare the original 1942 return showing gross receipts of $3,655,672.28 with the amended return for 1942 showing 'advances' of $3,180,536.97. The item in question, $472,722.15, if added to the 'advances' figure on the amended 1942 return, would total $3,653,259.15, the total contract price. Thus, it is said that a comparison of the two returns discloses that the final progress payments and 'holdbacks' from 1942 progress payments were improperly accrued as 1942 income.
 
 
 52
 This discrepancy is not sufficient to apprise the Commissioner of the improper accruals, because the amended return is consistent with, and solely indicative of, a proper application of the completed contract method. The foregoing, taken together with the statement in the refund claim, fortifies the conclusion that the only stated basis for refund was upon the theory of an application of the completed contract method.
 
 
 53
 Appellants also contend that the allegations of the complaint sufficiently set forth the improper accruals, which in the face of a failure of the Commissioner to raise the inadequacy of the refund claims in his answer, require a recovery. Paragraph IX of the complaint is pointed to as being sufficient; it reads:
 
 
 54
 'That at the end of the calendar year of 1942, an income tax return was made for the special partnership, notwithstanding the fact that the contract was not completed and accepted before December 31, 1942, and said income tax return was erroneously made and reported under the mistaken theory that the income was earned in the calendar year 1942. This income was then inadvertently reported by the plaintiffs as income as to their respective shares by the plaintiffs herein on their individual returns for said year.'
 
 
 55
 The statement is no more than an allegation of appellants' reliance on the completed contract method, and does not ask a refund on the theory of an improper accrual of two particular items. In a word, appellants advised the Commissioner in their claims for refunds that all of the income from the contract should have been reported in 1943, on a completed contract basis. They did not advise the Commissioner that certain items of 1943 income were improperly included in the 1942 return.
 
 
 56
 Appellants further contend that Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. would allow recovery irrespective of the defective refund claims. As we read the rule,[9] it cannot remedy an existing defect in a refund claim, and cannot provide a recovery where the grounds are not stated in the refund claim.
 
 
 57
 Appellants urged for the first time upon appeal that the Commissioner has by his conduct waived any defect in the refund claims. We cannot remand this cause to the trial court when the issue could have been litigated during the trial.
 
 
 58
 Even though, as we have heretofore pointed out, the appellants did elect to use the accrual accounting method, that method is not binding upon them, if it fails clearly to reflect income from the Delta contract. Appellants contend that it does not, and that they may therefore employ the completed contract method of accounting in reporting income from the Delta contract. In the event a taxpayer elects a method of reporting income which does not clearly reflect income, the Commissioner is free to recompute the income in accordance with a method which does so;[10] likewise, it is argued that the taxpayer is not bound by an election to report income upon a method of accounting which does not clearly reflect income.[11]
 
 
 59
 That proposition cannot afford appellants any comfort in the instant case. The accrual method clearly reflects income from the Delta contract.
 
 
 60
 Appellants' first contention on this phase of the case is bottomed upon the assumption that the two items improperly accrued as 1942 income, viz.: the 1942 'holdbacks' and the 1943 progress payments, a total of $472,722.15, distort the true income picture. The fact that appellants erroneously included said amounts in the 1942 income return, rather than as 1943 income, is not sufficient to demonstrate that the accrual method does not truly reflect income. The erroneous application of an accounting method by a taxpayer cannot be said to transform that method from one which clearly reflects income into one that does not.
 
 
 61
 Appellants then argue that the accrual method, properly applied, would not clearly reflect income from the Delta contract.
 
 
 62
 It must be realized that the completed contract accounting procedure is not operative until the net income or loss is determined; and its use is not characterized by the entries in the primary accounts. Either the cash receipts and disbursements method or an accrual method can be employed in the primary accounts of a concern electing to report taxable income upon the completed contract basis.
 
 
 63
 Many accounting procedures can be grouped under the definition of accrual accounting. See, e.g., Maloney v. Hammond, 9 Cir., 1949, 176 F.2d 780. Essentially, an accrual method recognizes income when the taxpayer has an unrestricted right to the money,[12] and deductions are taken when "paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period.'[13] Taxable income is reported upon an annual accounting concept.[14]
 
 
 64
 With respect to the Delta contract, the items of income consisted of the partial progress payments paid at the end of each calendar month upon approved estimates and ten per cent 'holdbacks' from those progress payments, paid upon completion and acceptance of all the work done under the contract.[15] Under an accrual accounting method, the partial progress payments would accrue in the year when the right to receive the payments ripened with certainty.[16] The remainder of the contract price would not accrue until the completion and acceptance of the contract.[17] Costs would be apportioned over the contract price, and the costs applicable to the income accrued at the end of 1942 would be deducted in that year. Accord, U.S. v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; see Wagman, Tax Accounting for Long-Term Contracts, 33 Taxes 277.
 
 
 65
 As a matter of practice, either the completed contract or the percentage of completion method might be preferable to a more traditional accrual accounting system, and might reflect income more accurately. But we cannot agree that an accrual method, reporting upon a fiscal year and accruing income and spreading deductions as hereinbefore stated, would not clearly reflect income from the Delta contract. The Venture elected to report taxable income upon an annual accrual basis, and is bound by its election.
 
 
 66
 Affirmed.
 
 
 
 [1]
 Article 16 of the contract read:
 'Payments to contractors-- (a) Unless otherwise provided in the specifications, partial payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, on estimates made and approved by the contracting officer. In preparing estimates the material delivered on the site and preparatory work done may be taken into consideration.
 '(b) In making such partial payments there shall be retained 10 per cent on the estimated amount until final completion and acceptance of all work covered by the contract: Provided, however, That the contracting officer, at any time after 50 per cent of the work has been completed, if he finds that satisfactory progress is being made, may make any of the remaining partial payments in full: And provided, further, That on completion and acceptance of each separate building, vessel, public work, or other division of the contract, payment may be made in full, including retained percentages thereon, less authorized deductions.
 '(c) All material and work covered by partial payments made shall thereupon become the sole property of the Government. * * *
 '(d) Upon completion and acceptance of all work required hereunder, the amount due the contractor under this contract will be paid upon the presentation of a properly executed and duly certified voucher therefor, after the contractor shall have furnished the Government with a release, if required, of all claims against the Government arising under and by virtue of this contract, other than such claims, if any, as may be specifically excepted by the contractor from the operation of the release in stated amounts to be set forth therein.'
 
 
 [2]
 A preliminary issue considered by the District Court, but not in issue on appeal, was whether the Venture was a new tax entity. It was stipulated that Daley Brothers, a partnership consisting of John and Morris Daley, had been keeping its books and reporting its income on the completed contract basis for many years prior to the tax year in question. The taxpayers argued below that the Venture was bound to continue the completed contract method of accounting, not having secured the Commissioner's permission to change to the accrual basis. The District Court held that the Venture was a new tax entity, and not bound to follow any previous accounting method. The statement in appellants' refund claims, 'The amended returns are consistent with the accounting procedure which was followed by Daley Brothers prior to 1942.', reflects this contention
 
 
 [3]
 Finding of Fact VI of the District Court stated: 'In the partnership income tax return for the year 1942, Daley Brothers Delta War Venture reported as income the full contract price of the War Department Contract.'
 
 
 [4]
 Int.Rev.Code of 1939, 41, 53 Stat. 24, 26 U.S.C.A. § 41, provided:
 'The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; * * *'.
 
 
 [5]
 See note 1 supra
 
 
 [6]
 Taxpayers argue in the alternative that the sum of these amounts, $472,722.15, can now be considered as 1943 income under the accrual method, and that a refund is due upon that theory. This contention is discussed later in the opinion
 
 
 [7]
 L. A. Wells Const. Co. v. Commissioner, 1942, 46 B.T.A. 302, affirmed, 6 Cir., 1943, 134 F.2d 623, certiorari denied, 1943, 319 U.S. 771, 63 S.Ct. 1436, 87 L.Ed. 1719; Bent v. Commissioner, 1930, 19 B.T.A. 181, affirmed 9 Cir., 1932, 56 F.2d 99; Jones v. Smith, 10 Cir., 1951, 193 F.2d 381, certiorari denied, 1952, 343 U.S. 952, 72 S.Ct. 1046, 96 L.Ed. 1353; Birkemeier v. Commissioner, 1939, 39 B.T.A. 1072; Anderson-Dougherty-Hargis Co., Inc. v. United States, D.C., N.D.Cal., 1950, 96 F.Supp. 404
 
 
 [8]
 See note 1 supra
 
 
 [9]
 Fed.R.Civ.P. 54(c) provides:
 '(c) Demand for Judgment. A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.'
 
 
 [10]
 Int.Rev.Code of 1939, § 41, 53 Stat. 24
 
 
 [11]
 Lebolt & Co. v. United States, 1929, 67 Ct.Cl. 422; accord, Ross v. Commissioner of Internal Revenue, 1 Cir., 1948, 169 F.2d 483, 7 A.L.R.2d 719
 
 
 [12]
 Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Estate of Putnam v. Commissioner, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 420; U.S. v. Anderson, 269 U.S. 422, 54 S.Ct. 644, 78 L.Ed. 1200; Continental Tie & L. Co. v. U.S., 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111
 
 
 [13]
 Int.Rev.Code of 1939, § 43, 53 Stat. 24, 26 U.S.C.A. § 43; see U.S. Treas. Regs. 111, § 29.43-1 (1943)
 
 
 [14]
 Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383
 
 
 [15]
 See note 1, supra
 
 
 [16]
 Clark v. Woodward Const. Co., 10 Cir., 1950, 179 F.2d 176
 
 
 [17]
 Dally v. Commissioner, 9 Cir., 1955, 227 F.2d 724