ST. LUKE'S HOSPITAL, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72227. Filed November 9, 1960.

*William T. Hancock, Esq.*, and *George Richardson, Jr., Esq.*, for the petitioner.

*C. Ralph Musgrove, Esq.*, for the respondent.

TRAIN, *Judge:* Respondent determined deficiencies in the petitioner's income taxes for the calendar years 1952, 1953, 1954, and 1955, in the respective amounts of $13,064.76, $75,334.69, $37,233.46, and $7,740.02. With respect to several items upon which minor portions of the deficiencies were based, the parties have reached agreement, to which effect will be given under Rule 50. The main issue is whether petitioner, having requested and received permission from respondent to change from an accrual to the cash receipts and disbursements method of reporting income for 1953 and subsequent years, properly reported income on the cash basis for those years, when it continued to employ primarily an accrual method of accounting in keeping its books and records. If not, it must be determined whether petitioner is entitled to bad debt deductions for these same years based on its bad debt experience in and method of reporting for the years immediately preceding 1953, and whether recoveries during the year 1953 on bad debts, charged off in taxable years for which an excess profits tax was not imposed, should be excluded from excess profits net income for that year.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are hereby found as stipulated.

The petitioner, St. Luke's Hospital, Inc., is a corporation organized under the laws of the State of West Virginia on March 21, 1921, and has its principal office and place of business at Bluefield, West Virginia. Its income tax returns for the years here involved were duly

filed with the district director of internal revenue for the district of West Virginia at Parkersburg.

For its taxable year ended December 31, 1952, and for prior calendar years, petitioner kept its books and prepared and filed its income tax returns on an accrual method.

Petitioner owns and operates a hospital in Bluefield. Its business is the customary hospital service business. It is not a merchandising business, and petitioner has no merchandise inventories which would require the use of an accrual method in keeping its books or reporting its income. Its income is derived from providing hospital and professional care to the sick.

Petitioner provides service and care for many patients who are indigent or otherwise unable to pay for such services. In many instances, people are admitted to petitioner's hospital under emergency circumstances and petitioner has no opportunity to ascertain or know anything about their ability to pay. Further, unforeseeably prolonged treatments due to complications, recurring illness, or other illness in the same family often result in the incurring of bills beyond the means of patients. There are no publicly supported institutions in petitioner's community where care is provided for indigent patients, and public funds supplied by the appropriate State agency are frequently inadequate to cover the full cost of the services which petitioner provides to patients who cannot pay therefor. As a result, petitioner is unable to control credits as an ordinary business does.

The collection of accounts was a serious problem in petitioner's business. Bad debts were very large. In charging off accounts receivable as uncollectible, in years prior to 1953, petitioner charged off those accounts that were approaching the statute of limitations, those that were in large amounts and upon which only token payments were being made, those accounts on which petitioner's experience had been uniformly bad, as for example, when it knew the family and that it would never collect on the account, and also those accounts where a patient would come in and incur an additional bill. An approximate doubling of hospital capacity by the year 1951 through increasing the number of beds so increased the number of patient accounts that the matter of determining what accounts should be charged off became more and more burdensome.

During the 6 years immediately preceding the year 1953 petitioner's gross operating income after refunds, allowances, and discounts, as shown on its books, was as follows:

| | |
|---|---:|
| 1947 | $396,337.16 |
| 1948 | 501,540.59 |
| 1949 | 540,484.25 |
| 1950 | 544,773.15 |
| 1951 | 674,240.85 |
| 1952 | 826,167.39 |

During the 6 years immediately preceding the year 1953, petitioner charged off on its books as bad debts the following amounts:

| | |
|---|---:|
| 1947 | $47,393.11 |
| 1948 | 97,713.48 |
| 1949 | 118,982.79 |
| 1950 | 92,912.09 |
| 1951 | 89,208.67 |
| 1952 | 162,886.33 |

Such chargeoffs represent an average of 17.485 per cent of the gross operating income of those years.

In light of petitioner's poor experience in collecting accounts, its difficulties in determining when to charge off such accounts, coupled with the inability of petitioner in many instances to control the granting of credit, together with the fact that petitioner was, under its accrual method of reporting income, paying taxes currently on accounts receivable on which it was not collecting in the current year, and might never collect at all, petitioner's president, its board of directors, and the certified public accountant who supervised its accounting operations concluded that the cash basis of reporting income would more truly reflect petitioner's income. The accountant suggested that petitioner request permission from respondent to change from its accrual method to the cash basis of reporting income. Accordingly, petitioner requested such permission by letter dated March 16, 1953, in which it was stated:

Re: Change in Accounting Method

Dear Sir:

[Petitioner] * * * has maintained its accounts on the accrual basis and has used such basis in the preparation of its U.S. income tax returns. It is believed that the cash receipts and disbursements method of accounting will more clearly reflect the annual income of the corporation and accordingly we request permission to change from the accrual method to the cash receipts and disbursements method for the calendar year 1953 beginning January 1, 1953.

We here set forth our reason for desiring this change. For the last several years the volume of business handled by the hospital has grown rapidly * * *. This growth should continue * * *. Experience points out that the loss as bad debts has been approximately 15% of the original charges to patients. Further, with this experience, it has currently proven very cumbersome and time consuming to periodically review many hundreds of accounts for the purpose of eliminating those receivables which probably will not be collected. The volume of annual bad debts is apparent * * *. Also, the corporation has in operation an approved profit sharing plan * * *, and under this plan the profits for distribution are computed on the basis of cash receipts and disbursements, after provision for income taxes on this basis. Thus, it is quite apparent that complete accounting on the cash basis would simplify the work of our business office and more clearly reflect the annual income of the corporation.

Attached hereto is a statement specifying the classes of items differently treated under the two methods and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change.

Accordingly, we respectfully request permission to change to the cash receipts and disbursements method of accounting beginning with the year 1953.

The attached statement in its entirety was as follows:

### Statement to Commissioner of Internal Revenue
### Relative to Change in Accounting Method

Following we set forth the significant items which will require special treatment in carrying out the proposed change in accounting method:

1. Accounts receivables at December 31, 1952 as set forth on the books of the company aggregated $152,531.36. If permission is granted to make the change, we propose deducting accounts receivable in total as of the beginning of the year from receipts for the entire year 1953. The accounts receivable were accumulated largely in 1952, and in that year and for a number of years prior thereto the corporation has operated on a profitable basis and has paid income and excess profits taxes.

2. Accounts payable, accrued salaries and other compensation and sundry accruals for taxes, etc., at December 31, 1952, will be deducted from disbursements made in the year 1953, so that disbursements for the current period will represent only the outlay of funds for costs and expenses in connection with current operations.

3. The company has never recorded inventories on hand in determining operating results, for the reason that such inventories, particularly medical supplies, medicines and drugs, are so widely distributed upon receipt to the various medical departments that physical inventories are virtually an impossible task.

4. We envision no changes in the handling of fixed assets or the computation of depreciation charges and do not propose to change the present handling of certain deferred costs, such as prepaid insurance. As to the latter item most policies are written on a three- or five-year basis.

By letter dated April 27, 1953, respondent replied to petitioner's letter as follows:

Reference is made to your letter dated March 16, 1953, in which you make application for permission to change your method of reporting income, for Federal income tax purposes, from the accrual basis to the cash receipts and disbursements basis, beginning with the taxable year ending December 31, 1953.

It is stated in your letter that as at December 31, 1952, there existed the following items:

(a) Income accrued but not received_____ $152,531.36
(b) Income received in advance of the date on which it was earned_____ None
(c) Expenses accrued but not paid_____ Not stated
(d) Expenses prepaid_____ Not stated
(e) Character and amount of inventory_____ None

The discretionary power of granting or denying applications for permission to change accounting bases is vested in the Commissioner and the existing income tax regulations provide that permission to change the method of accounting will not be granted unless and until the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected.

Permission will be granted you under the facts as presented to change your method of reporting income, for Federal income tax purposes, from the accrual basis to the cash receipts and disbursements basis, beginning with the taxable

year ending December 31, 1953, provided you irrevocably agree (1) to treat as income when received any item of income accrued as at December 31, 1952, which has not been previously reported in income; (2) to treat as income when received any item of recovered bad debts, prior taxes, or delinquency amounts to the extent that it was allowed as a deduction for a prior taxable year with a resulting tax benefit; (3) to exclude all items of income accrued as at December 31, 1952, which were returned as income under the accrual method in any prior year, irrespective of when such items are collected; and (4) to make no claim for items of deduction accrued as at December 31, 1952, which were allowed as deductions in any prior year, irrespective of when such items are paid.

The foregoing conditions are in addition to the treatment under the cash receipts and disbursements basis of items of income and deduction arising from transactions occurring on and after January 1, 1953. It should also be understood that your adoption of the cash receipts and disbursements basis for the taxable year ending December 31, 1953, will necessitate its use in subsequent taxable years unless permission is secured to change therefrom to another recognized basis.

Final action on your application will be deferred pending the receipt of written advice from you as to whether the terms and conditions set forth herein are acceptable to you. * * *

By a letter to respondent dated June 4, 1953, petitioner stated:

Reference is made to your letter of April 27, 1953 regarding our application for permission to change our method of reporting income for Federal income tax purposes.

This is to advise you that we irrevocably agree to the following terms and conditions as set forth in your letter:

[Then letter set forth the four numbered conditions contained in the letter of April 27.]

In addition, we understand that items of income and deduction arising from transactions occurring on/and after January 1, 1953 must be treated under the cash receipts and disbursements basis unless permission is secured to change therefrom to another recognized basis.

It is our understanding that our acceptance of the terms and conditions above gives us permission to change our method of reporting income from the accrual basis to the cash receipts and disbursements basis, beginning with the taxable year ending December 31, 1953.

Respondent replied to this letter by letter dated June 26, 1953, in which it was stated:

Reference is made to your letter dated June 4, 1953 in further reference to your application dated March 16, 1953 for permission to change your method of reporting income, for Federal income tax purposes, from the accrual basis to the cash receipts and disbursements basis, beginning with the taxable year ending December 31, 1953. It is noted that you agree to the terms and conditions set forth in office letter addressed to you under date of April 27, 1953.

Permission is hereby granted you under the facts as presented to change your method of reporting income, for Federal income tax purposes, from the accrual basis to the cash receipts and disbursements basis, beginning with the taxable year ending December 31, 1953, such change to be made in accordance with the terms and conditions set forth in office letter dated April 27, 1953.

The permission granted by respondent in his letter of June 26 to petitioner to change its "method of reporting income, for Federal

income tax purposes, from the accrual basis to the cash * * * basis," has never been withdrawn. Petitioner's income tax returns for the years 1953, 1954, and 1955 were prepared on a cash basis.

In determining the deficiencies for the years 1953, 1954, and 1955 respondent stated in his statutory notice:

It is determined that, in accordance with [section 41 of the Internal Revenue Code of 1939 for the year 1953, and section 446 (a) of the Internal Revenue Code of 1954 for the years 1954 and 1955] your net income should be computed under the accrual method of accounting which is the method of accounting regularly employed in keeping your books. Pursuant to the foregoing determination, adjustments which are reflected in the work papers of the accounting firm employed by you and which were used to adjust your book income to the amount reported in your return are reversed.

Petitioner's bookkeeping system and method of accounting were supervised, its books were audited, and its tax returns were prepared by a certified public accountant. The books and records were complete and were properly kept.

For 1953 and subsequent years, the retention by petitioner of an accrual method of accounting facilitated internal control, particularly with respect to accounts receivable from patients. Petitioner also retained the use of accounts payable. Among the accounts of an accrual nature maintained as part of petitioner's books were the following: Accounts payable invoices, accrued salaries and wages, accrued profit sharing, accrued taxes, accrued workman's compensation insurance, accounts receivable, and interest income receivable—not collected.

Although basically unchanged from the accrual system previously used, petitioner's books contained complete and full information from which an accountant could determine net income on the cash basis.

Petitioner on or about October 1, 1953, installed a cash receipts register, in which substantially all cash received was recorded daily. Some cash receipts of a nonincome nature, as for example, a bank loan, would be recorded through the general journal instead. Such a cash receipts register is appropriate to either an accrual or cash system of bookkeeping.

With respect to cash disbursements, a cash journal was used to record such amounts when actually disbursed, with certain exceptions, as for example, a bank service charge, which would be recorded directly through the general journal. This use of a cash journal is appropriate to either system of bookkeeping. Further, petitioner's voucher register showed both the accrual and the actual date of payment of all expense items. Petitioner paid its operating costs and current expenses regularly and currently.

In preparing petitioner's income tax returns for 1953, 1954, and 1955 on the cash basis, its accountant determined gross operating in-

come, cash basis, from petitioner's books in the following manner: To the years' net operating income (accrued, whether paid or not) he added the accounts receivable balance as of the beginning of the year, and all recoveries on bad debts previously charged off; from this total was subtracted the chargeoff of bad debts during the year, and the accounts receivable as of the end of the year. For the year 1953, the gross operating income was further reduced by the amount of accounts receivable on hand as of December 31, 1952. This amount had been previously included in petitioner's income on the accrual basis, for the year 1952.

The resulting amounts, except for the year 1953, because of the last-mentioned adjustment, represented collections on accounts and certain other cash income for each of the years in question. The accountant verified the accuracy of this method for the year 1954, by analysis of bank deposit receipts, eliminating therefrom nonincome items, and included this computation in his working papers for 1954, which are part of the record. The result was within $13 of the amount obtained by the method first described; cash receipts for the year 1954 were in excess of $829,000.

In determining deductible cash expenses for the years in question, unpaid expenses were subtracted from currently accrued expenses; to the resulting figure, for the years 1954 and 1955, was added the corresponding and previously subtracted accrued and unpaid expenses for each respective prior year and which had been paid in the respective current year. However, for the year 1953, such previously unpaid expenses were not added back to deductible expenses, because although paid during the year 1953, they had been previously deducted in the year 1952, on the accrual basis of reporting income. The identification of such expense items, as accrued and as paid, was expedited and dually checked by the existence of the cash journal and voucher register.

The results of the accountant's computations made for arriving at net income (cash basis) as shown on the returns were never entered on petitioner's primary books of entry, but were preserved by him in his files and were made available to respondent's agents examining petitioner's books and returns. The cash expense worksheets were preserved as part of the accountant's working papers. The computations for determining gross income (cash basis) were prepared on work sheets in the form of a schedule and a copy thereof was incorporated into the annual audit reports furnished to petitioner.

Adjustments for each year were made with respect to life insurance expense, and for 1953, an additional adjustment for unallowable contributions paid, adjustments for tax purposes from the book figures which would be required under either system of reporting income.

The items added and subtracted to determine net income on the cash basis were originally reflected in the petitioner's books and records, and except for the exclusion of accounts receivable as of December 31, 1952, from income for 1953, such adjustments were made in accordance with accepted accounting principles. Certain items required no adjustments at all for purposes of reporting on a cash basis.

In summary, the method followed and the figures involved in converting petitioner's net income, as disclosed by its accrual books, cash receipts journal, and cash journal, to cash basis income, for the years 1953, 1954, and 1955, were as follows:

| | 1953 | | 1954 | | 1955 | |
|---|---:|---:|---:|---:|---:|---:|
| Ordinary income (loss) disclosed by books | | $107,027.85 | | $78,347.35 | | $31,135.75 |
| Additions: | | | | | | |
| Accounts payable invoices not paid—Dec. 31 | $16,502.80 | | $15,303.55 | | $14,552.57 | |
| Accrued salaries and wages not paid—Dec. 31 | 14,871.46 | | 15,486.90 | | 15,689.50 | |
| Accrued profit sharing not paid—Dec. 31 | 13,742.81 | | 3,706.90 | | 304.69 | |
| Accrued taxes not paid—Dec. 31 | 6,030.96 | 51,148.03 | 6,503.33 | 41,000.68 | 6,861.40 | |
| Accrued workman's compensation insurance not paid—Dec. 31 | | ............ | | .......... | 120.15 | 37,528.31 |
| Bad debts not deductible | | 32,097.48 | | 54,760.61 | | 75,746.77 |
| Collections on patients' accounts | | 755,847.00 | | 812,181.06 | | 814,650.88 |
| | | 946,120.36 | | 986,289.70 | | 959,061.71 |
| Deductions: | | | | | | |
| Billings to patients, less rebates and refunds | 875,185.83 | | 906,186.56 | | 894,442.49 | |
| Accounts receivable Jan. 1, 1953 | 147,331.96 | | | | | |
| Accounts payable and accruals, closing of previous year—reversed | | .......... | 51,148.03 | | 41,000.68 | |
| Interest income receivable—not collected | | 1,022,517.79 | | 957,334.59 | 56.25 | 935,499.42 |
| Cash income (loss) per books | | (76,397.43) | | 28,955.11 | | 23,562.29 |
| Adjustments for tax return: | | | | | | |
| Contributions unallowable | 778.98 | | | | | |
| Life insurance expense | 1,192.15 | 1,971.13 | 1,880.58 | 1,880.58 | 5,167.71 | 5,167.71 |
| Income (loss) disclosed by return | | (74,426.30) | | 30,835.69 | | 28,730.00 |

Relying upon respondent's permission, petitioner did not follow the same policy with respect to charging off bad debts on its books and records for 1953 and subsequent years, as it had in prior years. Instead, because it considered that its income for tax purposes would be dependent on cash receipts, it grew lax in this matter, and the bad debts accrued during these years are not a proper reflection of bad debts, in light of petitioner's experience in preceding years.

The terms and conditions of respondent's permission to petitioner to change its method of accounting for reporting income tax for the year 1953 and subsequent years were substantially complied with, and petitioner is entitled to report its income during the years in question on the cash basis.

Permission was granted by respondent, under the third condition of his letter of April 27, to exclude any previously accrued and reported item of income only as it was received and taken into income on the cash basis, "irrespective" of the year in which that should occur.

The accounts receivable as of December 31, 1952, were substantially collectible accounts, as distinguished from accounts to be eliminated as uncollectible and charged off as bad debts. Of the total accounts receivable as of December 31, 1952, in the amount of $147,331.96 (the amount of $152,531.36, less $5,199.40, representing accounts receivable from employees), the amount of $95,765.77 was collected in 1953, and the amount of $51,566.19 in 1954.

OPINION.

Petitioner contends that it complied with the conditions requested by respondent in granting petitioner permission to change its method of reporting income from an accrual to the cash basis. Petitioner concedes only that it retained basically an accural system of accounting; it contends in effect that respondent did not require it to do otherwise. Petitioner contends that its books and records during the years in question properly reflected cash basis income, upon the making of certain adjustments in accordance with accepted accounting principles, which it allegedly did in preparing its income tax returns for the years in question. It argues that the accountant's working papers and annual audit reports clearly set forth the methods and figures used in computing net (or taxable) income on the cash basis, and if necessary, should be considered a part of its books and records. *Patchen* v. *Commissioner*, 258 F. 2d 544 (C.A. 5, 1958), reversing 27 T.C. 592 (1956); *Geometric Stamping Co.*, 26 T.C. 301 (1956); and *Maloney* v. *Hammond*, 176 F. 2d 780 (C.A. 9, 1949).

Respondent contends that the consent granted is inoperative because the statute and regulations thereunder [1] provide the general rule that

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

Regulations 118, sec. 39.41–1. *Computation of net income.* * * * If the method of accounting regularly employed by him in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income and deductions are to be accounted for. * * * If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation shall be made in such manner as in the opinion of the Commissioner clearly reflects it.

Sec. 39.41–2 * * *.

(b) The true income, computed under the Internal Revenue Code and, if the taxpayer keeps books of account, in accordance with the method of accounting regularly employed in keeping such books (provided the method so used is properly applicable in determining the net income of the taxpayer for purposes of taxation), shall in all cases be entered in the return. If for any reason the basis of reporting income subject to tax is changed,

the "net income shall be computed in accordance with the method of accounting regularly employed in keeping the books of such taxpayer," that the petitioner kept its books on the accrual basis, and must report its income accordingly; that it granted permission for a change in the method of accounting, which change was not made; and finally,

---

the taxpayer shall attach to his return a separate statement setting forth for the taxable year and for the preceding year the classes of items differently treated under the two systems, specifying in particular all amounts duplicated or entirely omitted as the result of such change.

(c)¹ A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. For the purposes of this section, a change in the method of accounting employed in keeping books means any change in the accounting treatment of items of income or deductions, such as a change from cash receipts and disbursements method to the accrual method, or vice versa; * * * Application for permission to change the method of accounting employed and the basis upon which the return is made shall be filed within 90 days after the beginning of the taxable year to be covered by the return. The application shall be accompanied by a statement specifying the classes of items differently treated under the two methods and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change. Permission to change the method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected. * * *

   *      *      *      *      *      *      *

Sec. 39.41–3 *Methods of accounting.* It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to do so. * * *

[Section 446 (a) and (b) of the Internal Revenue Code of 1954 are substantially identical to the quoted portion of section 41. Section 446 (e) provides :]

(e) REQUIREMENT RESPECTING CHANGE OF ACCOUNTING METHOD.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

[And see Income Tax Regulations, sec. 1.446–1.] * * * (a) *General rule.*—(1) Section 446(a) provides that taxable income shall be computed under the method of accounting on the basis of which a taxpayer regularly computes his income in keeping his books. The term "method of accounting" includes not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item. Examples of such over-all methods are the cash receipts and disbursements method, an accrual method, combinations of such methods, * * *.

(2) * * * A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year.

   *      *      *      *      *      *      *

(4) Each taxpayer is required to make a return of his taxable income for each taxable year and must maintain such accounting records as will enable him to file a correct return. * * * Accounting records include the taxpayer's regular books of account and such other records and data as may be necessary to support the entries on his books of account and on his return as, for example, a reconciliation of any differences between such books and his return. * * *

   *      *      *      *      *      *      *

(c) *Permissible methods.*—(1) *In general.*—Subject to the provisions of paragraphs (a) and (b) of this section, a taxpayer may compute his taxable income under any of the following methods of accounting :

(i) *Cash receipts and disbursements method.*—Generally, under the cash receipts and disbursements method in the computation of taxable income, all items which constitute gross income (whether in the form of cash, property, or services) are to be included for

that petitioner has failed further to comply with the conditions of the permission granted by excluding accounts receivable as of December 31, 1952, from 1953 income, thus distorting income for that and subsequent years. Accordingly, he has the discretionary authority to require that petitioner compute its income on the accrual method previously used in reporting income. Sec. 41, I.R.C. 1939; sec. 446(b), I.R.C. 1954 [2]; *Advertisers Exchange, Inc.*, 25 T.C. 1086 (1956), affirmed per curiam 240 F. 2d 958 (C.A. 2, 1957); *Deakman Wells Co.*, 20 T.C. 610 (1953), reversed on other grounds 213 F. 2d 894 (C.A. 3, 1954).

We agree with petitioner with respect to the propriety of reporting income on the cash basis for the years in question.

While certain language in petitioner's first letter to respondent could be considered misleading with respect to the method of internal accounting it contemplated using for 1953 and subsequent years, such language was not unambiguous, and respondent did not expressly make the discontinuance of the accrual method of accounting a condition precedent to the granting of the permission to change the method of reporting income.[3] Petitioner has proved that its books and records were sufficient to correctly reflect cash basis income, and, except as hereinafter stated, did clearly reflect such income, although

the taxable year in which actually or constructively received. Expenditures are to be deducted for the taxable year in which actually made. * * *

   *        *        *        *        *        *        *

(e) *Requirement respecting the adoption or change of accounting method.* * * *

(2)(i) * * * a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. A change in the method of accounting includes a change in the over-all method of accounting for gross income or deductions, or a change in the treatment of a material item. Consent must be secured whether or not a taxpayer regards the method from which he desires to change to be proper. Thus, a taxpayer may not compute his taxable income under a method of accounting different from that previously used by him unless such consent is secured.

(ii) Examples of changes requiring consent are: A change from the cash receipts and disbursements method to an accrual method, or vice versa; * * *

   *        *        *        *        *        *        *

(3) In order to secure the Commissioner's consent to a change of a taxpayer's method of accounting, the taxpayer must file an application by letter with the Commissioner of Internal Revenue, Washington 25, D.C., within 90 days after the beginning of the taxable year in which it is desired to make the change. The application shall be accompanied by a statement specifying the nature of the taxpayer's business, his present method of accounting, the method to which he desires to change, the taxable year in which the change is to be effected, the classes of items which would be treated differently under the new method, and all amounts which would be duplicated or omitted as a result of the proposed change. The Commissioner may require such other information as may be necessary in order to determine whether the proposed change will be permitted. Permission to change a taxpayer's method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms, conditions, and adjustments under which the change will be effected. * * *

[2] See footnote 1, *supra*.

[3] The language contained in the correspondence would seem to indicate that the permission granted concerned the method of reporting income rather than the method of accounting, which would appear to require compliance with the provisions of Regulations 118, sec. 39.41–2(b), instead of (c), see footnote 1, *supra*. However, since the parties followed the procedure set forth in (c), and have so framed the issue, we consider the issue one concerning a change in the method of accounting for purposes of reporting income.

adjusting and closing entries had to be made.  In light of the language of the conditions of the permission granted by respondent, we do not think that more was required in the instant case.  Respondent's contention that the general rule set forth in the statute is mandatory in the instant case is not well founded.  *Geometric Stamping Co., supra* at 305, 306; *National Airlines, Inc.,* 9 T.C. 159 (1947) ; *R. G. Bent Co.,* 26 B.T.A. 1369, acq. XII-1 C.B. 2.  Petitioner's attempt to comply with respondent's requirements ought to be recognized by respondent. *Geometric Stamping Co., supra; Maloney* v. *Hammond, supra.*  The terms and conditions of the consent to change, insofar as they were clear, have been complied with and petitioner is entitled under the peculiar circumstances of this case to report its income on the cash basis.

The granting of the permission to change accounting methods for purposes of reporting income distinguishes the instant case from those relied on by respondent; *Patchen* v. *Commissioner, supra,* is for the same reason distinguishable, and we need not reconsider our holding therein.

A subsidiary question concerns the exclusion of the accounts receivable from patients as of December 31, 1952, from petitioner's 1953 cash income.  Petitioner relies on the fact that it informed respondent of its intention of so doing, and the third condition in the letter of April 27 :

(3)  To exclude all items of income accrued as at December 31, 1952, which were returned as income under the accrual method in any prior year, irrespective of when such items are collected ;

Respondent contends that this condition requires that these amounts, otherwise includible in cash income when received, be excluded only when received, and that petitioner, having failed to prove that the entire amount was received in 1953, was not entitled to exclude the amount from 1953 cash income, because such exclusion distorts income accordingly.[4]  There is merit in respondent's contention.  On the

---

[4] Petitioner's 1953 gross cash income was as follows :

Net operating income (all charges to patients, less rebates, refunds, and allowances)_____ $875, 185. 83
Accounts receivable, Jan. 1, 1953_____ 147, 331. 96
Plus: Recoveries—
Reinstated previously charged-off accounts_____ $43, 400. 04
Net recoveries, bad debts_____ 4, 016. 39
                                                      47, 416. 43
Less:
Accounts receivable, Dec. 31, 1953_____ (234, 573. 31)

Gross cash income_____ 835, 360. 91
From this amount, petitioner excluded the amount of_____ 147, 331. 96

the accounts receivable balance as of Dec. 31, 1952, and thus reported gross cash income in the amount of_____ 688, 028. 95

The propriety of the exclusion depends on the extent to which the amount of $147,331.96 is included in the net operating income, in contrast to the already excluded accounts receivable balance of Dec. 31, 1953.  In other words, the propriety of the exclusion depends on the extent to which the amount was in fact received and included in cash income.

cash basis such amounts would be included when received, although previously taxed, unless provision was made for their exclusion. The overall intent of the four conditions to the granting of the permission was to accomplish the change in reporting with the least possible distortion of income. The conditions were intended to be carried out "beginning with the taxable year ending December 31, 1953," and compliance with them, because of their nature, was not limited to the making of adjustments in the year 1953.[5] The last phrase in the third condition is not in conflict with this overall intent, but means only that "irrespective" of the year in which such amounts are collected, they are to be excluded from income of that year. However, petitioner has been lax in proving the portion of the accounts collected in 1953. We know only the opening and closing accounts receivable balances and the amounts of gross operating income for the relevant years, and that the accounts receivable in question were substantially collectible, because of petitioner's strict chargeoff method with respect to bad debts in effect in 1952, when it charged off 19.716 per cent of gross operating income as uncollectible. Further, these accounts were collectible within a "reasonable time." To postpone the exclusion indefinitely, as respondent contends we should, because of the inexactitude of proof, would be to assure the frustration of the purpose of the third condition, by requiring previously taxed amounts to be taxed again as received. Accordingly, bearing heavily on the taxpayer for the vagueness of its proof, we have determined from the evidence of record when the accounts were collected, as set out in our Findings of Fact, and they shall be excluded from cash basis income accordingly.

We hold that the petitioner is entitled to report its income during the years in question on the cash basis. The net operating loss for the year 1953, and the carryback to the year 1952 shall be computed in accordance with our decision herein. Our decision makes it unnecessary to consider the petitioner's other allegations of error.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: Section 41 of the 1939 Code provides that a taxpayer shall file returns in accordance with the method of accounting regularly employed in keeping the books of such taxpayer. The present taxpayer kept its books on an accrual basis of accounting and filed its returns on that basis up to 1953, but then, because of the bur-

---

[5] For example, the fourth condition would require that any payments in 1954 or 1955 of expenses accrued and deducted as of Dec. 31, 1952, be excluded from cash basis deductions for the year in which they were paid. (In the instant case, such expenses were paid in 1953, and excluded by petitioner in that year.)

den of determining what accounts receivable were uncollectible, it asked permission to change its method of reporting to the cash receipts and disbursements method. This permission was granted. However, the petitioner did not change its bookkeeping methods and records but merely filed returns on the new basis. Nothing in the Commissioner's permission to file returns on the cash basis authorized any waiver of the section 41 requirement that returns and bookkeeping methods be in accord, nor is it clear that he would have had any authority to give such a waiver had he attempted to do so. It seems to me that the permission granted was and had to be on condition that the petitioner keep books on a cash receipts and disbursements basis if it was going to file its returns on that basis because that is required by section 41. This is necessary to prevent a too difficult burden in auditing the returns being placed upon the Commissioner.

TURNER, KERN, RAUM, PIERCE, ATKINS, and SCOTT, JJ., agree with this dissent.